William GASPERINI, Plaintiff–Appellee,

v.

The CENTER FOR HUMANITIES, INC., doing business as Guidance Associates, Defendant–Appellant.

No. 1133, Docket 94–7753(L).

United States Court of Appeals, Second Circuit.

Argued March 8, 1995.

Decided Sept. 12, 1995.

Francis A. Montbach, New York City (Bigham Englar Jones & Houston, New York City, on the brief), for appellant Center for Humanities, Inc.

Samuel A. Abady, New York City (Jonathan S. Abady and David N. Mair, Rubin, Kalnick, Bailin, Ortoli & Abady, P.C., New York City, on the brief), for appellee William Gasperini.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Although we usually think of photography as creating a permanent record, its permanence is tenuous at best. This is particularly so in the case of slide transparencies, the medium in which most professional photographers work. Duplication of the original transparency is difficult and necessarily involves a significant loss of quality. As a result, commercially viable prints can in most cases only be made from the original transparency. And once an original slide transparency is lost, the ability to make commercially usable prints is also lost, leaving behind only those prints that had already been made. This reality lends a certain urgency to transactions involving the use of original transparencies.

In this case, plaintiff-appellee William Gasperini, a journalist, provided some three hundred slides to the defendant-appellant Center for the Humanities ("the Center"), slides which the Center subsequently lost. The Center conceded liability for the lost transparencies, and a jury trial on the issue of damages was held before the United States District Court for the Southern District of New York (Brieant, *J.*). The jury returned an award of damages for Gasperini in the amount of $450,000. Because we conclude that this award is excessive under New York law (the applicable law in this diversity case), a new trial will be required unless Gasperini agrees to a remittitur and accepts an award of $100,000.

## I. BACKGROUND

William Gasperini is a well-regarded journalist for CBS News and the Christian Science Monitor. Since he began his journalism career in 1984 in Central America, Gasperini has earned his living primarily in the radio and print media, although, on occasion, he has also sold photographs. Gasperini's earnings from photography, by his estimation, total just over $10,000 for the period from 1984 through 1993.

In 1990, Gasperini entered into a contract with the Center, under which Gasperini agreed to supply the Center with original color transparencies that he took in Central America between 1984 and 1990. Gasperini delivered 300 transparencies to the Center; he claimed that his mother produced an additional ten transparencies at a later date. The Center used the transparencies in the preparation of an educational videotape titled *Conflict in Central America.* Gasperini was to be paid a royalty of fifteen percent of the cash receipts from the sale of the videotape. It was understood that the Center would return the original transparencies to Gasperini when work on the videotape was completed. But when the time came, and despite an extensive search, the Center could not locate the transparencies.

Gasperini brought this diversity action in the District Court for the Southern District of New York. The Center admitted liability, and the issue of damages was tried to a jury in June 1994. At the trial, Gasperini presented evidence, largely through expert witness Jane Kinne, that an "industry standard" within the photographic publishing community valued lost transparencies at $1,500 each. Following a three-day trial, the jury returned a verdict awarding Gasperini damages of $450,000, which, according to the jury foreman, represented $1,500 each for 300 transparencies. The Center moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. The district court denied the motion without comment, and this appeal followed.

## II. DISCUSSION

Because the jury returned a damage award equal to the so-called industry standard of $1,500 per lost transparency, the Center focuses its argument on the propriety of allowing the jury to hear evidence about that standard. According to the Center, in the absence of an explicit agreement to pay the so-called industry standard as liquidated damages in the event transparencies are lost, no industry standard exists under New York law. Because there was no liquidated damages agreement in this case, the Center contends that it was error to deny the Center's motion *in limine* and to allow the jury to hear evidence about an industry standard.

The Center is correct that the Appellate Division of the New York Supreme Court has on two occasions refused to recognize an industry standard as, by itself, determinative of value. *See Nierenberg v. Wursteria, Inc.,* 189 A.D.2d 571, 571–72, 592 N.Y.S.2d 27, 28 (1st Dep't), *leave to appeal denied,* 82 N.Y.2d 651, 601 N.Y.S.2d 581, 619 N.E.2d 659 (1993); *Alen MacWeeney, Inc. v. Esquire Assocs.,* 176 A.D.2d 217, 218, 574 N.Y.S.2d 340, 341 (1st Dep't 1991), *leave to appeal dismissed,* 79 N.Y.2d 1015, 584 N.Y.S.2d 437, 594 N.E.2d 931 (1992). But the Appellate Division has not unequivocally rejected the relevance of evidence of an industry standard when such evidence is combined with other proofs. Rather, the court has concluded: "This record, as well as case law, makes it clear that no such standard exists, without, *inter alia,* a consideration of

the uniqueness of the subject matter of the slides and the earning level of the photographer." *MacWeeney,* 176 A.D.2d at 218, 574 N.Y.S.2d at 341; *see also Nierenberg,* 189 A.D.2d at 572, 592 N.Y.S.2d at 28 (quoting *MacWeeney* ). From the references to the "record" in these decisions, it is apparent that the New York courts view the existence of an industry standard as, at least in part, a question of fact, subject to proof at trial. Accordingly, the district court did not err in allowing the jury to hear evidence about an industry standard.

■ That said, the jury's award cannot stand. As we have noted, New York law, in setting damages for lost transparencies, requires a consideration of (1) the uniqueness of the transparencies and (2) the earning level of the photographer. *Blackman v. Michael Friedman Publishing Group,* 201 A.D.2d 328, 328, 607 N.Y.S.2d 43, 44 (1st Dep't 1994); *Nierenberg,* 189 A.D.2d at 572, 592 N.Y.S.2d at 28; *MacWeeney,* 176 A.D.2d at 218, 574 N.Y.S.2d at 341. And Gasperini failed to make a showing on either point sufficient to sustain the jury's verdict.

■ Without question, some of the transparencies were unique: as Gasperini described them, they depicted combat situations in which Gasperini was the only photographer present. But Gasperini also testified that on numerous occasions other able, professional photographers were present, sometimes in large numbers, when he took photographs that were among the three hundred lost. Although we accept the proposition that each photographer brings his or her own skills, judgment, and perspective to a particular scene, leading to some variation between photographs of a single event, no reasonable jury could have concluded, as the jury in this case did, that each of the lost three hundred transparencies was equally, and significantly, original.

Gasperini's earning record as a photographer further undercuts the jury verdict. The only evidence presented on this point was that the commercial use of Gasperini's photographs yielded income of slightly more than $10,000 over the ten year period from 1984 through 1993; in no year did he earn more than $3,720.40. For all his skills as a photog-rapher, Gasperini did not earn his living with his camera, and there was no evidence presented that he would do so in the future. Gasperini did testify that he had intended to produce a book about his experiences in Central America, a project that he claims is now doomed to failure by the loss of the three hundred transparencies. But there was no evidence presented that Gasperini had found, or would have been able to find, a publisher for such a work, much less that the volume would have earned him significant income.

Given the New York requirement that we consider the uniqueness of the lost transparencies and the earning level of the photographer, rather than relying solely on the so-called industry standard, the testimony of Jane Kinne, Gasperini's expert on the valuation of photographs, is of little utility. Ms. Kinne did testify that, in her opinion, the lost transparencies should be valued at $1,500 each. Her explanation for this valuation, however, said a lot about the alleged industry standard and virtually nothing about either uniqueness or earning level. Ms. Kinne explained the value she gave to the transparencies as follows: a transparency taken by a professional photographer and selected in a professional edit is, under the industry standard, worth $1,500; Gasperini is a professional photographer whose work has been professionally edited; therefore, the value of each of the lost transparencies is $1,500. Thus, under Ms. Kinne's approach, a common photograph of the President exiting a helicopter (culled from a number of such shots), taken by an inexperienced but published photo-journalist, would have the same value as a classic image taken by a photographer with the reputation of Walker Evans or Alfred Eisenstaedt. New York law does not countenance such a methodology.

The object of tort damages is to do what can be done to make an injured party whole; it is not meant to be a winning lottery ticket. In light of Gasperini's failure to make an effective showing that all 300 lost transparencies were unique, and the strong evidence of Gasperini's limited earning power as a photographer, the jury's award of $450,000 cannot be regarded as anything but a financial windfall for Gasperini.

A review of New York cases involving lost transparencies further supports the conclusion that the jury's award in this case was excessive. *See Consorti v. Armstrong World Indus.*, 64 F.3d 781, 789–90 (2d Cir.1995) (when New York substantive law governs a diversity case, we look to New York decisions for guidance on the issue of excessiveness of damages). We acknowledge the limited utility of comparing damage awards in different cases, particularly since we find ourselves without access to the full records in the prior cases. *See id.* at 790–91. Nevertheless, there is a clear pattern in appellate decisions addressing awards of damages for lost transparencies, and that pattern is instructive.

The Appellate Division has considered such damage awards on four occasions in the last six years. Only once did the court permit an award of $1,500 per lost transparency. *Girard Studio Group v. Young & Rubicam, Inc.*, 147 A.D.2d 357, 357, 536 N.Y.S.2d 790, 790 (1st Dep't 1989). In *Girard,* the court made no reference to the purported industry standard, but instead valued transparencies that "represented classics from a long career." *MacWeeney,* 176 A.D.2d at 218, 574 N.Y.S.2d at 341. In each of the other three cases, the Appellate Division reduced the award of damages to well under $1,500 per transparency. In *Nierenberg v. Wursteria, Inc.,* the court noted that, while there was evidence of the lost transparencies' uniqueness, that evidence was offset by the fact that the plaintiff earned little from still photography. It therefore rejected the application of the purported industry standard and reduced the damage award to $500 per transparency. 189 A.D.2d at 571–72, 592 N.Y.S.2d at 28. In *Blackman v. Michael Friedman Publishing Group,* where the record contained evidence of the photographer's earning power but no evidence of uniqueness, the court reduced a damage award from $1,000 per transparency to $400 per transparency. 201 A.D.2d at 328, 607 N.Y.S.2d at 44. And in *Alen MacWeeney, Inc. v. Esquire Associates,* despite evidence that the plaintiff was a successful photographer who earned $265,000 in the year of the loss, the court reduced a damage award from the claimed industry standard of $1,500 per transparency to less than $159 per transparency—a total of $30,000 for 189 transpar-

encies—because of the generic nature of the transparencies' subject matter. 176 A.D.2d at 218, 574 N.Y.S.2d at 341.

Gasperini cites a number of unpublished New York trial court awards applying the claimed industry standard of $1,500 per lost transparency. But these cases are inapposite for three reasons. First, our role in a diversity case in which the state's highest court has not spoken on an issue is to attempt to discern how that court would decide the issue. *See O'Neill v. City of Auburn,* 23 F.3d 685, 689–90 (2d Cir.1994); *Plummer v. Lederle Lab.,* 819 F.2d 349, 355 (2d Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). And we believe that published decisions of the Appellate Division are generally far better predictors of how the New York Court of Appeals would decide a question of state law than even a fair number of unpublished proceedings in the trial courts. Second, several of the unpublished decisions that Gasperini cites predate the Appellate Division's decisions in *MacWeeney* and *Nierenberg;* to the extent that the opinions are in conflict, the Appellate Division of course controls. And finally, as the district court noted, the bulk of the unpublished decisions are in cases that involved provisions under which the defendants expressly agreed to pay $1,500 in liquidated damages for any lost transparency. No such provision exists in this case.

New York law provides that, in a case where a jury returns an itemized verdict, as the jury did in this case, the Appellate Division "shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y.Civ.Prac.L. & R. § 5501(c) (McKinney Supp.1995). This standard accords less deference to the jury's award than does the traditional standard, under which the jury's award is to be upset only if it is so excessive as to shock the conscience of the court. *Consorti,* 64 F.3d at 789–90, 791–92; *see also Matthews v. CTI Container Transp. Int'l,* 871 F.2d 270, 278 (2d Cir.1989) (stating the traditional standard). This being a diversity case, we are bound to follow the standard set forth in the New York statute. *Consorti,* 64 F.3d at 789–90.

Applying this standard, we conclude that the jury's award of $450,000 to Gasperini materially deviates from what is reasonable compensation. As we have said, where there is some evidence of uniqueness but no evidence of significant earnings, the New York courts have determined that damages above approximately $500 per lost transparency are excessive. *Nierenberg*, 189 A.D.2d at 571–72, 592 N.Y.S.2d at 28. And where evidence of substantial earnings is offset by the absence of evidence of uniqueness, the courts have reduced damages awards to between $159 and $400 per lost transparency. *Blackman*, 201 A.D.2d at 328, 607 N.Y.S.2d at 44; *MacWeeney*, 176 A.D.2d at 217–18, 574 N.Y.S.2d at 341. In this case, Gasperini presented plausible evidence that some of his photographs were truly unique. Giving Gasperini every benefit of the doubt, there may have been as many as fifty such slides. The remaining photographs, however, were not unique; rather, they depicted either generic scenes or events at which other professional photojournalists were present. And, although Gasperini is a respected journalist whose contacts in the news industry may boost his prospects as a photographer, he has no established record of significant earnings from the commercial use of his photographs.

Drawing all reasonable inferences in favor of Gasperini, we conclude that the jury could have awarded damages of up to $1,500 per transparency for the transparencies as to which there was plausible evidence of significant uniqueness. As to the remaining transparencies, however, in light of Gasperini's limited earnings and the lack of uniqueness, any damage award of more than $100 per transparency would be excessive. Accordingly, we conclude that any award totalling more than $100,000 would exceed reasonable compensation.

Remittitur always presents difficult problems for appellate courts. We review the evidence on a cold paper record, and we compare that record to prior decisions as to which we have only an incomplete knowledge of the facts. This case is particularly difficult, since neither we nor the jury was able to see the lost transparencies themselves. In the end, it is not our job to impose a specific award of damages—that task is for the jury. We do, however, have the obligation to patrol the outer bounds of what damages a jury may reasonably award, and to offer a choice between remittitur and a new trial when those bounds have been exceeded. *See Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir. 1992); *Phelan v. Local 305 of the United Ass'n of Journeymen, & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Can.*, 973 F.2d 1050, 1064 (2d Cir. 1992). Accordingly, we will set aside the jury's verdict of $450,000, and will order a new trial unless Gasperini acquiesces to an award of $100,000.