William GASPERINI, Plaintiff–Appellee,

v.

The CENTER FOR HUMANITIES, INC., doing business as Guidance Associates, Defendant–Appellant.

No. 97–9293.

United States Court of Appeals, Second Circuit.

Argued May 11, 1998.

Decided July 7, 1998.

Francis A. Montbach, Mound, Cotton & Wollan, New York City, for Defendant–Appellant.

Jonathan S. Abady, Beldock, Levine & Hoffman, LLP, New York City (Matthew D. Brinckerhoff, Emery, Celli, Culi & Brinckerhoff LLP, New York City, Samuel A. Abady, Law Offices of Samuel A. Abady, P.C., on the brief), for Plaintiff–Appellee.

Nancy E. Wolff, Cavallo, Wolff & Wolf, New York City, for amicus curiae The Picture Agency Council of America, Inc.

Before: WALKER and McLAUGHLIN, Circuit Judges, and SHADUR,* District Judge.

* The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation.

JOHN M. WALKER, Jr., Circuit Judge:

The case of plaintiff William Gasperini's lost slide transparencies is before us once again, this time on appeal from the district court's judgment granting defendant The Center for Humanities, Inc.'s ("the Center") renewed motion for a new trial unless Gasperini accepted a remittitur of $75,000 from the jury's original verdict awarding him damages of $450,000. Gasperini accepted remittitur and was awarded reduced damages of $375,000 plus prejudgment interest. The Center appeals. When this case was before the Supreme Court, the Court made it clear that our review of the district court's most recent judgment is limited to determining whether it abused its discretion.

The Center argues that the district court abused its discretion by awarding $375,000 plus prejudgment interest despite this court's previous decision that any award greater than $100,000 would "'deviate[] materially from what would be reasonable compensation,'" and therefore would be excessive under New York law. *See Gasperini v. Center for Humanities, Inc.*, 66 F.3d 427, 430 (2d Cir.1995) (quoting N.Y. C.P.L.R. § 5501(c)). We think that the Center misunderstands the nature of the appropriate review in this case. Although our previous application of New York law led us to a conclusion quite different from that reached by the district court below, the Supreme Court has taught us that it is no longer our role to apply the New York law of excessive jury damage awards in the first instance, but only to patrol the district court's decision to ensure that its application of the law stays within the bounds of reason. Applying that deferential standard, we find that the district court did not abuse its discretion. However, because the district court improperly based its award on 310 lost slides, instead of the 300 lost slides as found by the jury, we vacate and remand for further proceedings.

## BACKGROUND

The facts of this case are set forth in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), *Gasperini v. Center for Humanities, Inc.*, 66 F.3d 427 (1995), and *Gasperini v.*

*Center for Humanities, Inc.*, 972 F.Supp. 765 (S.D.N.Y.1997), familiarity with which is presumed. Briefly, Gasperini is a well-regarded journalist for CBS News and the Christian Science Monitor. Although he has made his living primarily in radio and print media, he has also, on occasion, sold photographs. By his own estimation, Gasperini earned just over $10,000 as a photographer between 1984 and 1993.

In 1990, Gasperini agreed to supply original color slide transparencies to the Center for use in its videotape production entitled "Conflict in Central America: An Historical Commentary." Gasperini took over 5,000 slides while in Central America between 1984 and 1990. He selected 300 of these and delivered them to the Center. Gasperini testified that his mother delivered ten additional transparencies to the Center at a later date, but his mother denied having done so. Out of the 300 slides, 110 were included in the Center's videotape. Gasperini and the Center understood that the latter would return the slides to Gasperini when work on the videotape was completed. However, the Center lost the slides and never returned them.

Gasperini brought this diversity action in the United States District Court for the Southern District of New York (Charles L. Brieant, *District Judge*). The Center admitted liability, and a three-day jury trial was held to determine damages. At trial, Gasperini presented evidence, largely through the expert testimony of Jane Kinne, that the industry-wide standard value for a lost "professionally-taken and professionally-edited" transparency is $1,500. The foreman, announcing the jury's verdict, stated: "[w]e award the plaintiff [$]450,000, which is [$]1500 each, for 300 slides." The Center's Fed.R.Civ.P. 59 motion for a new trial, based in part on the excessiveness of the damage award, was denied without comment by the district court. *See Gasperini*, 518 U.S. at 420, 116 S.Ct. 2211. The district court later explained that it applied the federal rule for review of jury verdicts in declining to order remittitur or a new trial. *See* 972 F.Supp. at 772. Under the federal rule, a court will not disturb a jury award unless it is "so excessive

as to shock the conscience of the court." *Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1011 (2d Cir.1995).

We reversed and remanded, applying New York law, rather than federal law, to our review of the jury verdict. *See Gasperini,* 66 F.3d at 429–31 (applying New York law); *see also Consorti v. Armstrong World Indus., Inc.,* 103 F.3d 2, 4 (2d Cir.1995) (per curiam). The appropriate New York rule is found in C.P.L.R. § 5501(c), which states that the Appellate Division should "determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." This standard is less deferential to the jury and thus more favorable to the party challenging the award than is the federal "shocks the conscience" review originally conducted by the district court. Based on our plenary application of § 5501(c), we concluded that any award over $100,000 would violate the "deviates materially" standard. *See* 66 F.3d at 431.

The Supreme Court granted certiorari, *see Gasperini v. Center for Humanities, Inc.,* 516 U.S. 1086, 116 S.Ct. 805, 133 L.Ed.2d 752 (1996). The Court agreed with us that § 5501(c) provides the appropriate standard for review of the district court's judgment. *See* 518 U.S. at 430–31, 116 S.Ct. 2211. However, it faulted us for attempting to apply the "deviates materially" standard ourselves. According to the Supreme Court, " '[t]he proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is . . . a matter of federal law.' " *Id.* at 437, 116 S.Ct. 2211 (quoting *Donovan v. Penn Shipping Co.,* 429 U.S. 648, 649, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977) (per curiam)) (alteration in original). Under the federal system, it is the " 'role of the district court [ ] to determine whether the jury's verdict is within the confines set by state law, and to determine . . . whether a new trial or remittitur should be ordered. The Court of Appeals should then review the district court's determination under an abuse-of-discretion standard.' " *Id.* at 435, 116 S.Ct. 2211 (quoting *Browning–Ferris Indus. of Vt.,*

*Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). The Supreme Court vacated the judgment of this court and instructed us to remand to the district court so that it could "test the jury's verdict against CPLR § 5501(c)'s 'deviates materially' standard" in the first instance. *Id.* at 439; *see also Consorti,* 103 F.3d at 5; *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 18 (2d Cir.1996). A panel of this court remanded the case accordingly. *See Gasperini v. Center for Humanities, Inc.,* 95 F.3d 3 (2d Cir.1996) (per curiam).

On remand, the district court undertook to apply § 5501(c) to the jury's award of $450,-000. *See Gasperini,* 972 F.Supp. at 768. Although the jury had awarded damages based on 300 slides, the district court included the ten slides allegedly delivered by Gasperini's mother and found that the Center lost 310 slides. *Id.* at 767. It provided no explanation for this variance from the jury's verdict. The district court found that 240 of the slides were original and that 70 of the slides were not original, and that reasonably each of the former could be valued as high as $1,500 and the latter as high as $200, for a total award of $375,000.[1] *Id.* at 772–73. The district court ordered a new trial unless Gasperini accepted a remittitur of $75,000 (reducing the jury's original award from $450,000 to $375,000, plus prejudgment interest). *Id.* at 773. Gasperini accepted remittitur, and the Center appealed.

## DISCUSSION

### I. *Review of the Jury Verdict for Excessiveness*

On writ of certiorari from this court's first judgment in this case, the Supreme Court held that appellate review of the district court's judgment as to the excessiveness of the jury's damage award under New York law is limited to determining whether the district court has abused its discretion. *See* 518 U.S. at 438, 116 S.Ct. 2211; *cf. Binder v. Long Island Lighting Co.,* 57 F.3d 193, 202 (2d Cir.1995) (reviewing for abuse of discre-

---

1. This calculation should have yielded $374,000 (($1,500 × 240) + ($200 × 70) = $374,000), in-  stead of $375,000.

tion district court's decision to grant new trial pursuant to Fed.R.Civ.P. 59 because jury verdict was against weight of evidence).

■ Under New York law, the value of lost slides depends primarily on their uniqueness and the "plaintiff's earning potential." *Lowit v. Consolidated Edison Co.,* 234 A.D.2d 2, 650 N.Y.S.2d 152, 152 (1996); *accord Blackman v. Michael Friedman Publ'g Group,* 201 A.D.2d 328, 607 N.Y.S.2d 43, 44 (1994) ("The proper standard ... is a consideration of uniqueness of the transparencies and plaintiff's earning potential."); *see also Gasperini,* 66 F.3d at 429 (New York courts consider "(1) the uniqueness of the transparencies and (2) the earning level of the photographer"); *Nierenberg v. Wursteria, Inc.,* 189 A.D.2d 571, 592 N.Y.S.2d 27, 28 (1993) ("uniqueness of subject matter of the slides and the earning level of the photographer"); *Alen MacWeeney, Inc. v. Esquire Assocs.,* 176 A.D.2d 217, 574 N.Y.S.2d 340, 341 (1991) (same).

In reaching its decision, the district court considered several factors, including primarily the sales potential of the photographs and their uniqueness as directed by *Lowit* and *Blackman. See Gasperini,* 972 F.Supp. at 771–72. It found that the closest appellate division decision on point was *Girard Studio Group, Ltd. v. Young & Rubicam, Inc.,* 147 A.D.2d 357, 536 N.Y.S.2d 790, 790 (1989), where the court reduced an award from $3,000 per slide to $1,500. The latter figure was justified by "evidence that the lost slides represented classics from a long career." *Alen MacWeeney,* 574 N.Y.S.2d at 341 (discussing *Girard* ). The district court found that Gasperini's lost slides were collected over a seven year period, were edited down from 5,000 photographs, were of "superior quality," were "unique[ ]," and that "most of them were irreplaceable." *Gasperini,* 972 F.Supp. at 770. The district court found that the jury could reasonably value 240 of those slides at $1,500 each. *Id.* at 772. It found that 70 slides were "readily replaceable and available from other sources," and that "[a] reasonable jury should not value [those] generic slides in excess of an average of $200.00 per slide." *Id.* at 773. Although photography "was not [Gasperini's] main business,"

972 F.Supp. at 769, and his earnings from the sale of photographs was quite low, the district court apparently found these circumstances outweighed by Gasperini's potential future earnings from the sale of his slides. Thus, the district court applied § 5501(c)'s "deviates materially" standard, compared the award in this case to awards in other cases that the district court found to be comparable, and reached a reasonable conclusion that an award of $375,000 would not be excessive.

■ The Center argues that the district court abused its discretion simply because it reached a contrary conclusion to that reached by the panel of this court that first considered the issue. The Center misunderstands the abuse-of-discretion standard. Discretion in this context means the district court's freedom to choose among several reasonable alternative decisions. *See Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 377 (2d Cir.1997). As former Chief Judge Friendly has written, "the trial judge has discretion in those cases where his ruling will not be reversed simply because an appellate court disagrees." Henry J. Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 754 (1982). "Abuse of discretion" may have different meanings in different contexts; the deference given a particular decision depends upon "the reason why that category or type of decision is committed to the trial court's discretion in the first instance." *Id.* at 764. Deference is "traditionally accorded to [trial judges in] ... such post-trial matters as the grant or denial of a motion for a new trial," *id.* at 760–61, because such decisions turn on factors " 'so numerous, variable and subtle that the fashioning of rigid rules would be more likely to impair [the trial judge's] ability to deal fairly with a particular problem than to lead to a just result,' " *id.* (quoting *United States v. McCoy,* 517 F.2d 41, 44 (7th Cir.1975), alteration in original). Deference is justified because the district judge is closer to the evidence, and is therefore in a better position to determine whether a particular award is excessive given the facts of the case. *Cf. Wilton v. Seven Falls Co.,* 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (appropriate to give district court discretion over deci-

sion to grant declaratory judgments because facts bearing on decision are particularly within its grasp); *Ball v. City of Chicago,* 2 F.3d 752, 755 (7th Cir.1993) (similar considerations govern appellate review of district court's dismissal of action for failure to prosecute). Thus, unless the district court's decision to deny or grant a motion for a new trial results from an erroneous view of the law or clearly erroneous findings of fact, *see New York Magazine, Div. of Primedia Magazines, Inc. v. Metropolitan Transp. Auth.,* 136 F.3d 123, 126 (2d Cir.1998); *International Bhd. of Teamsters v. Teamsters Local Union 714, Machinery Scrap Iron, Metal and Steel Chauffeurs,* 109 F.3d 846, 849 (2d Cir.1997), or unless its decision is arbitrary, unsupported by the facts, *see City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 196 & 196 n. 8, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995), unreasonable, based on its failure to consider all relevant factors, *see United States v. Certain Real Property and Premises Known as 4003–4005 5th Ave., Brooklyn, NY,* 55 F.3d 78, 85 (2d Cir.1995), unfair, *see id.,* beyond the range of its authority, *see Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990), or otherwise manifests a clear error of judgment, the district court has not abused its discretion.[2]

■ The district court here acted within its discretion. It did not commit legal error in applying § 5501(c), and considered the proper factors in determining the reasonableness of the jury award. Nor were any of its factual findings clearly erroneous. And although the first panel concluded, based on its review of a "cold paper record," and without having examined any of the slide transparencies, that the award in this case deviated materially from reasonable awards in similar cases by at least $350,000, *see Gasperini,* 66 F.3d at 431, that conclusion is largely irrelevant to our determination now. The Supreme Court has explained that the federal system places primary responsibility for conducting this analysis in the district court. We cannot set aside its fairly-reasoned decision merely because we might disagree with the outcome it reached, or because, if it were left to us, we might decide the matter differently. "If we reverse, it must be because of an abuse of discretion. . . . The very nature of the problem counsels restraint. . . . We must give the benefit of every doubt to the judgment of the trial judge." *Gasperini,* 518 U.S. at 438–39, 116 S.Ct. 2211 (internal quotation marks omitted, alteration in original). Unlike the first panel of this court, both the jury and the district court examined the 110 slides that were included on the Center's videotape.[3] The district court was better positioned to review the reasonableness of the jury verdict, and we owe deference to its decision. Except for the ten slides that were not included in the jury verdict, the district court was within its discretion in valuing the slides for purposes of calculating Gasperini's loss and entering remittitur accordingly.

We note that the Supreme Court's decision in *Gasperini* should not be read to diminish a federal Court of Appeals' obligation and power to correct a jury verdict unauthorized by law, such as a verdict supported by insufficient evidence or otherwise without legal authorization. *See Gasperini,* 518 U.S. at 442, 116 S.Ct. 2211 (Stevens, J., *dissenting* ); Fed.R.Civ.P. 50. However, the first panel did not find that the jury verdict was erroneous as a matter of law; it found only that the verdict was excessive under § 5501(c). *See Binder,* 57 F.3d at 202 (different standards of review on appeal applicable to district court's entry of judgment as a matter of law pursuant to Rule 50 and discretionary decision to grant a new trial pursuant to Rule 59); *Bevevino v. Saydjari,* 574 F.2d 676, 683–84 (2d Cir.1978) (discussing difference between judgment as a matter of law on basis of insufficient evidence, Fed.R.Civ.P. 50, and grant of motion for a new trial because verdict is against weight of evidence, Fed. R.Civ.P. 59).

---

**2.** The language of Fed.R.Civ.P. 59(a) supports a broad grant of discretion to the district court: "[a] new trial *may* be granted . . . for *any* of the reasons for which new trials have heretofore been granted in actions at law." (emphasis added).

**3.** The first panel was under the misimpression that the jury did not examine any of the slides. *See Gasperini,* 66 F.3d at 431.

## II. *Scope of Cross–Examination*

The Center complains that the district court improperly limited its cross-examination of Gasperini. Specifically, the Center complains that when it tried to elicit testimony from Gasperini that the lost slides were not unique, the court improperly stopped this line of questioning. The exchange was as follows:

Q. [Counsel for the Center]: When you were in Nicaragua taking pictures, were there other photojournalists with you at the time you were taking the pictures?

MR. S. ABADY [Counsel for Gasperini]: Objection as to relevance.

THE COURT: It's probably relevant to show that other peoples have pictures of Nicaragua. Sometimes there were, sometimes there weren't. Use your common sense.

A. [Gasperini]: Exactly. Sometimes there were, sometimes there weren't. Usually there were.

Q. Usually there were?

A. There were trips I took into the mountains where I was by myself or with one other person. There were other times when there were hundreds of journalists present. During the summit meetings for example.

Q. When there were pictures of all these people that were listed, the famous people, is that correct? There were dozens, as you said hundred of journalists?

A. Only on occasion. For example, if Daniel Ortega took a press conference, there were always photographers present. That's just common sense. There were other times when I would see him as he got out of his vehicle, ... and I was there and there were not that many photographers present. But usually he would attract a lot of people present.

Q. You listed pictures, two of which were in the video, taken in May of 1986 of Oscar Arias. There were other photographers present there, right?

A. Yes.

Q. You listed two pictures of Daniel Ortega taken during the summit, you said others were there, is that correct?

A. Yes.

Q. Two taken of Daniel Ortega during the historic February election campaign—

MR. S. ABADY: Objection....

MR. MONTBACH: This goes to uniqueness of his pictures.

THE COURT: The witness has already told you that for many of the scenes there were other pictures taken by other photographers of the same people or the same places or the same events. He's told you that. Even if he did not tell you that, their common sense would tell them that. The jurors would know that....

If there's a list of the pictures you want to introduce the list of pictures (sic) in evidence, the jurors can determine how likely it is that similar pictures exist or don't exist.

Mr. MONTBACH: I don't know if that's true, your Honor. I think I have a right to ask him this question.

THE COURT: I think I have a right to tell you not to. Waste of time....

MR. MONTBACH: I do not want to introduce the list of the pictures, your Honor....

The district court acted within its discretion in limiting cross-examination of Gasperini. Pursuant to Fed.R.Evid. 403, a district court may limit cross-examination "if [the] probative value [of the testimony] is substantially outweighed by the danger of ... undue delay, waste of time, or needless presentation of cumulative evidence." *See* also Fed.R.Evid. 611(a); *United States v. Sasso*, 59 F.3d 341, 348 (2d Cir.1995). We review the district court's decision to limit cross-examination for an abuse of discretion. *See United States v. Scotti*, 47 F.3d 1237, 1248 (2d Cir.1995); *United States v. McElroy*, 910 F.2d 1016, 1023 (2d Cir.1990). In the present case, counsel for the Center was permitted to cross-examine Gasperini on the presence of other photographers, and Gasperini admitted that other photographers were usually present. The district court acted within proper bounds in deciding to limit further exploration of this issue in order to avoid wasting time.

III. *The District Court's Determination of the Number of Lost Slide Transparencies*

The district court made one relatively minor error which requires us to remand. The jury awarded damages based on the loss of 300 slides. The district court increased this number to 310 by including ten slides allegedly delivered to the Center by Gasperini's mother. However, the delivery of those slides was the subject of disputed testimony: Gasperini testified that his mother delivered them; his mother, called by Gasperini as a friendly witness, testified that she did not. By awarding damages for 300 slides, the jury presumably found either that these ten additional slides were not delivered as Gasperini's mother had testified, or that they lacked any value.

▮ The district court has provided no explanation for its rejection of the jury's finding in this regard; nor do we perceive one. The jury was free to credit the testimony of Gasperini's mother, and the district court is bound by the jury's decision. Because we cannot determine whether the court valued the additional ten slides at $1,500, at $200, or some at $1,500 and some at $200, we are unable to simply exclude the ten slides and recalculate the award ourselves.

We think the fairest course is as follows. Gasperini may wish to stipulate that the district court valued the ten additional slides to be excluded at $1,500 each, for a total of $15,000, in which case the district court may immediately enter judgment for Gasperini in the amount of $359,000 plus pre-judgment interest.[4] If Gasperini declines to so stipulate, then the district court is directed to recalculate remittitur excluding the ten slides allegedly delivered by Gasperini's mother. The proper amount could be as high as $372,000 (($1,500 × 240) + ($200 × 60)) or as low as $359,000 (($1,500 × 230) + ($200 × 70)), plus pre-judgment interest, depending upon whether the district court values the ten slides at $200 or $1,500. After two rounds in the district court, three in this court, and one in the Supreme Court, we leave it to Gasperi-

ni to decide whether he wishes to leave the ring now, or whether this potential difference of $13,000 plus pre-judgment interest is worth a third round in the district court.

## CONCLUSION

The judgment of the district court is vacated and remanded. If Gasperini stipulates that the district court valued each of the ten slides allegedly delivered by his mother at $1,500, we direct the district court to enter judgment of $359,000 plus prejudgment interest. If not, the district court is directed to recalculate the remittitur on the basis of 300 slides. In all other respects, the judgment is affirmed.

▮

---

**4.** $374,000 minus $15,000 is equal to $359,000. Recall that the $375,000 awarded by the district court should have been no higher than $374,000.