Alvin FULTON Jr., Plaintiff–Appellant,

v.

Laurie ROBINSON, Defendant–
Appellee.

Docket No. 00–9547.

United States Court of Appeals,
Second Circuit.

Submitted: Sept. 10, 2001.

Decided: May 9, 2002.

Alvin Fulton, Jr., Rochester, NY, Plaintiff–Appellant pro se.

Linda S. Kingsley, Corporation Counsel, Rochester, N.Y. (Paul D. MacAulay, Municipal Attorney, Rochester, NY, of counsel), for Defendant–Appellee.

Before: KEARSE, MINER, and F.I. PARKER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff *pro se* Alvin Fulton, Jr., appeals from a judgment of the United States District Court for the Western District of New York, Charles J. Siragusa, *Judge,* dismissing his claims brought under 42 U.S.C. § 1983 (1994) against defendant Laurie Robinson, a police officer in the City of Rochester, New York, for malicious prosecution, false arrest, and use of excessive force during arrest. The district court granted summary judgment dismissing the malicious prosecution and false arrest claims on the ground that they were foreclosed by the fact that Fulton was convicted on one of the charges on which he was arrested; the court dismissed the excessive force claim on the ground that the force used against Fulton, in the circumstances, was not excessive. On appeal, Fulton contends principally (a) that he is entitled to pursue his claims of malicious prosecution and false arrest because one of the charges on which he was arrested was dismissed on double jeopardy grounds, and (b) that the court erred in ruling as a matter of law that the force used against him was not excessive. He also makes various assertions of procedural error.

For the reasons that follow, we conclude that summary dismissal of the complaint was appropriate.

## I. BACKGROUND

The present action has its origin in a domestic dispute between Fulton and his estranged wife, Mary Lee McCoullough Fulton ("Mary"), which was the subject of proceedings in New York Family Court in Monroe County, New York, beginning in May 1997. On May 27, 1997, the family court issued a temporary protective order prohibiting Fulton, until June 3, 1997, from being within 1,000 feet of Mary; that order was reissued on June 12, 1997, and remained in effect until July 2, 1997 (collectively the "Protective Order"). Most of the ensuing events are not genuinely in dispute; where there are genuine disputes as to material facts, the record is viewed in the light most favorable to Fulton as the party against whom summary judgment was granted.

### A. The Events of July 2, 1997

On June 27, 1997, Mary filed in family court a verified "Petition for Violation of Order of Protection," stating that on that morning, Fulton had come to the back door of her home, with a gun in his waistband and a gasoline can in his hand, and had threatened to kill her and burn her house down. The petition requested that Fulton be jailed for the maximum time allowed.

On July 2, 1997, Mary lodged a complaint with the police. In a written "deposition," which contained a notice that any false statements therein would be punishable under § 210.45 of the New York Penal Law, she described Fulton's threats and conduct of June 27. In addition, she stated that on June 29, Fulton came to her house around midnight and silently looked into her windows; and she stated that on

July 2, during an appearance in family court, Fulton murmured, loudly enough for Mary to hear but too softly for the judge to hear, apparently threatening words. Based on Mary's deposition, Rochester Police officers filled out two sworn accusatory instruments against Fulton with respect to his June 27 conduct: One was a felony information/complaint charging him with criminal contempt in the first degree, in violation of N.Y. Penal L. §§ 215.51(b)(i), (ii), and (vi) (McKinney 1999); the other was a misdemeanor information/complaint charging him with harassment in the second degree, in violation of N.Y. Penal L. §§ 240.26(1) and (3) (McKinney 2000).

Fulton learned of Mary's complaint from his attorney on July 2. He telephoned the police and stated that he would turn himself in at midnight. Fulton was then temporarily staying in an apartment at 309 Frost Avenue, Rochester, which had been rented to one Loretta Davis, who was then in jail. Following Fulton's call to the police, Robinson went to 309 Frost Avenue in order to arrest Fulton but did not find him there.

Later that evening, Mary made a "911" call seeking police assistance in removing property from the Frost Avenue apartment; the call was apparently made on behalf of Davis's sister, Samantha Benjamin, who was taking care of one or more of Davis's children and wanted to pick up some of their clothing. In response to this call, five police officers went to the Frost Avenue apartment; they were admitted into the building by its owner and its manager. Fulton, who was then in Davis's apartment, was arrested on charges of criminal contempt in the first degree and harassment in the second degree.

The manner of, and participants in, that arrest are somewhat in dispute. Fulton asserts that the police officers, after being let into the building, broke the locks on the door to Davis's apartment and forced their way in while he was asleep. He awoke to find Robinson shining a flashlight in his face and pointing her gun at him. One or more of the other officers pointed guns and mace at him, kicked the bed frame, and verbally abused him. Robinson denies that she was in the apartment at the time of Fulton's arrest; she states that she was outside, securing the perimeter of the building. It is not disputed that after his arrest, Fulton was placed in handcuffs and was taken to the police station by Robinson in her patrol car. Nor is it disputed that Fulton threatened to kick out the car's windows and that, in response, Robinson threatened to "cap-stun" him.

B. *Resolutions of the Charges Against Fulton*

On August 14, 1997, Fulton was indicted in a 10–count indictment that included three counts based on his alleged conduct on June 27: one count of first-degree criminal contempt for violating the Protective Order by placing Mary in reasonable fear of physical injury "by displaying what appeared to be a pistol, revolver, or other firearm or by means of a threat or threats" (Count One); one count of second-degree criminal contempt for violating the Protective Order by coming within 1,000 feet of Mary (Count Two); and one count of second-degree harassment in that "with intent to harass, annoy or alarm another person, to wit, Mary Fulton, [Fulton] did strike, shove, kick or otherwise subject such other person to physical contact or attempted or threatened to do the same" (Count Three). In addition, Fulton was charged with five counts of criminal contempt or harassment for other alleged violations of the Protective Order between June 15 and June 29; and he was charged with two counts of harassment for threatening Robinson on July 2.

In September 1997, proceedings were held in family court on Mary's complaints that Fulton had violated the Protective Order on June 27 and June 29. (*See* Family Court Transcript, September 4, 1997 ("Fam.Ct.Tr."), at 3 ("THE COURT: .... We are scheduled to continue the fact-finding concerning the two violations of order of protection case ....").) Those proceedings were resolved by a settlement, as reflected in the following colloquy:

> THE COURT: All right. On these matters, my understanding is that an order of protection for three years by stipulation without the Court making any specific findings of aggravating circumstances would be acceptable to Ms. Fulton; ....
>
> ....
>
> What's being proposed is that this order of protection, Mr. Fulton, would take care of the three cases that I have.
>
> Two of those cases are contempt cases. Each one of those could carry a jail term of up to six months. And those petitions would be withdrawn.
>
> And I would make a one year order of protection on the family offense proceeding without finding that anything wrong happened, simply to settle the matters between you and Mrs. Fulton.
>
> There would be an order of protection to direct that you stay away from Mrs. Fulton wherever she may be and have no contact with her ....
>
> I will also place you on probation for a period of one year.
>
> You do not have to agree to this. You have the right to have the trial continue, and have the matters concluded, but if you do agree, you are giving up the right to have a trial.
>
> RESPONDENT ALVIN FULTON: I understand that very well, Judge.
>
> THE COURT: All right.

> RESPONDENT ALVIN FULTON: Also, let it be—is it also noted in that agreement that this is without prejudice.
>
> THE COURT: Well, it's not—without prejudice is not the term that's used. I'm not making any findings.
>
> RESPONDENT ALVIN FULTON: You're not making a finding?
>
> THE COURT: There is prejudice to you because if you violate this order, you can be prosecuted in criminal court and in Family Court. And in criminal court the penalties can be a Class D felony in certain cases.
>
> In Family Court, again, you could be prosecuted and a request made for six months incarceration for each and every violation. So I can't say that this is without any prejudice to you because there could be prejudice if you violated it.
>
> RESPONDENT ALVIN FULTON: I understand this, Judge.
>
> THE COURT: But I'm not finding that anything wrong happened.

(Fam.Ct. Tr. 8–10.)

> THE COURT: ... I'm going to make a one year order of protection—sorry, three year order of protection ....
>
> I'm going to ask that the clerk's office prepare that order right away. There are no aggravating circumstances noted. This is by stipulation and without a finding.
>
> And I'm going to make a one year term of probation ....

(Fam.Ct. Tr. 11.)

Some three weeks after this disposition, Fulton moved in New York Supreme Court for Monroe County to dismiss the August 14 indictment, contending principally that the charges had been resolved in the family court proceeding and that the criminal prosecution was thus barred by principles of double jeopardy. The su-

preme court, in a Decision dated October 23, 1997 ("First Supreme Court Decision"), ordered Fulton to submit documentary support for his contention that the family court adjudication constituted a previous prosecution as defined in the New York Criminal Procedure Law, including the family court's Protective Order, the petition alleging violation of that order, and the papers and transcripts revealing the final disposition of those allegations. *See* First Supreme Court Decision at 4–5. After receiving the additional information, the court, in a Decision dated October 27, 1997 ("Second Supreme Court Decision"), granted the motion to dismiss as to the criminal contempts charged in counts one and two, which were based on Fulton's June 27 conduct (collectively "the June 27 contempt counts"), and count eight, which was based on his June 29 conduct. The court denied the motion to dismiss the remaining counts, most of which charged conduct other than the June 27 and June 29 acts that were at issue in the September family court proceeding. *See* Second Supreme Court Decision at 1–2 ("[I]n the Family Court hearing, the alleged victim only testified to an alleged incident on June 27, 1997, which is the subject of Counts One, Two and Three of the indictment, and the alleged incident on June 29, 1997, which is the subject of Count Eight in the indictment."). The supreme court refused to dismiss Count Three, charging Fulton with harassment on June 27, because that count and the family court charge of violating a Protective Order each contained an element that was not an element in the other. *See id.* at 2.

In January 1998, after a jury trial in supreme court, Fulton was convicted of all the undismissed charges in the indictment.

### C. *The Present Action*

Fulton commenced the present action in 1999, asserting a variety of personal and property claims in connection with the family court proceedings and the events of July 2, 1997, naming as defendants Robinson, Mary, Benjamin, the family court judge, Monroe County and its sheriff, the City of Rochester, the Frost Avenue building's owner, and the building's manager. By Order dated May 5, 1999, the district court, John T. Curtin, *Judge*, dismissed all of Fulton's claims except those against Robinson for excessive force, false arrest, and malicious prosecution.

Following a period of discovery and unsuccessful motions by both sides for summary judgment, Judge Siragusa, to whom the case had been reassigned, granted a motion by Robinson for summary judgment, which asserted both qualified immunity and lack of merit, dismissing the remaining claims against Robinson for lack of merit. Noting that there was a dispute as to whether Robinson had participated in Fulton's arrest, the court assumed for purposes of the summary judgment motion that she had participated, *see* Amended Decision and Order dated November 30, 2000 ("November 2000 Opinion"), at 4–5; but it concluded that the claims for false arrest and malicious prosecution were barred because Fulton had been convicted on one of the charges on which he was arrested. The court stated that

> [Robinson] relies on the existence of an "arrest package" which charged [Fulton] with the felony offense of criminal contempt in the first degree and the violation of harassment in the second degree, both charges based on [Fulton's] conduct on June 27, 1997. The June 27 conduct formed the basis for his arrest on July 2, 1997, and eventual indictment by the Grand Jury on August 14, 1997 . . . . The first two counts of the indictment charged [Fulton] with violations of a Family Court order of protection by his conduct on June 27, 1997 . . . . The

third count alleged the same conduct, time and place, but charged him with the violation of harassment in the second degree. The first two counts were dismissed in criminal court since [Fulton] had already undergone a factual hearing on the underlying conduct in Family Court and entered into an agreement to be placed on one year of probation as a result. Though [Fulton's] lawyer, in his motion in criminal court, characterized [Fulton] as having pleaded guilty in Family Court to the violation of the order of protection, [Fulton] at oral argument insisted that Family Court Judge Kohout specifically found that he had committed no wrong[;] this Court notes that one cannot be placed on probation if one is not found responsible for conduct supporting the underlying charge. Nevertheless, [Fulton] went to trial on the remaining counts in the indictment, including the third count charging harassment in the second degree, and was found guilty.

November 2000 Opinion at 5–6. Citing *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), the district court stated the general rule that "if the arrested individual is subsequently convicted of the offense for which he was arrested, that conviction bars a claim under § 1983" for, *inter alia,* false arrest or malicious prosecution, November 2000 Opinion at 7–8; and it noted that Fulton had been "subsequently convicted of harassment in the second degree, one of the offenses for which he was arrested by [Robinson]," *id.* at 8. Although the June 27 criminal contempt charge on which Fulton was arrested had been dismissed on grounds of double jeopardy, the district court reasoned that Fulton's conviction of harassment, the remaining arrest charge, sufficed to bar his claims, given that all of the June 27 charges were based on the same underlying conduct on a single occasion against a single victim.

As to the claim of excessive force, the district court noted that Fulton did not claim that he was subjected to actual physical force, but only that Robinson "was[ ] 'shining her light and her gun,' in the Plaintiff's face when the police entered the apartment where he was sleeping on July 2, 1997." *Id.* at 6 (quoting Fulton's deposition testimony). Fulton contended that his arrest should not have been *"at gunpoint." Id.* at 8 (emphasis in original). The court concluded that the arrest of Fulton at gunpoint was justified in light of Robinson's knowledge of the undisputed facts, *inter alia,* that Fulton had previously been convicted of criminal possession of a weapon and that he was wanted on a felony charge *in connection with threats he had made to Mary while displaying a gun in his belt.*

Judgment was entered dismissing the complaint, and this appeal followed. The only claims whose dismissals are challenged on appeal are the malicious prosecution, false arrest, and excessive force claims against Robinson.

## II. DISCUSSION

On appeal, Fulton contends principally that, because the contempt charge on which he was arrested was dismissed on grounds of double jeopardy, the district court erred as a matter of law in ruling that his claims of malicious prosecution and false arrest were foreclosed by his conviction of harassment. He also pursues his contention that his arrest at gunpoint constituted the use of excessive force, and he makes various claims of procedural error. We affirm the dismissal of Fulton's excessive force claim for the reasons stated by the district court; we reject Fulton's other contentions for the reasons that follow.

## A. *The Claim of False Arrest*

A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Id.* at 119.

In the district court proceedings, Fulton did not dispute that he had been arrested on charges of criminal contempt and harassment:

> THE COURT: .... What was [Fulton] arrested for?
>
> MR. MACAULAY [Robinson's attorney]: Your Honor, he was arrested for criminal contempt in the first degree and harassment in the second degree.
>
> THE COURT: Do you dispute that, what you were arrested for?
>
> MR. FULTON: No, I don't Judge.

(District Court Transcript, November 2, 2000 ("Dist.Ct.Tr."), at 5.) Those charges were reflected in official instruments sworn to by police officers after Mary had made a written complaint to the officers, under penalty of perjury, charging Fulton with violations of the Protective Order and with harassment by, *inter alia*, threatening to kill her and burn her house down. The harassment instrument also noted the signing officer's "[p]ersonal investigation of the Complainant." Fulton proffered no evidence to suggest that the officers had any reason to doubt Mary's veracity. Indeed, Fulton, upon learning of her complaint to the police, promptly telephoned the police station and promised to turn himself in. On the undisputed facts of record, summary dismissal of the false arrest claim was proper because Fulton could not show that he was arrested without probable cause.

## B. *The Claim of Malicious Prosecution*

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, *see, e.g., Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir.1997), *cert. denied*, 522 U.S. 1115; 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998), and establish the elements of a malicious prosecution claim under state law, *see, e.g., Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995); *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir.1989). To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor. *See, e.g., id.; Murphy v. Lynn*, 118 F.3d at 947; *Broughton v. State*, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Although Robinson's final summary judgment motion in the present action argued that Fulton could not establish most of these elements, contending, *inter alia*, that "there was more than sufficient probable cause to believe that [Fulton] was guilty of Criminal Contempt in the First Degree based on the supporting deposition of [Mary] and the signed criminal complaint in the possession of the police at the time of the arrest," and that "there is no basis upon which the Court can infer the existence of malice" (Affidavit of Paul D. MacAulay

dated August 31, 2000, ¶ 12), the hearing in the district court with respect to the malicious prosecution claim focused solely on the favorable-termination element.

■ Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence. *See, e.g., Russell v. Smith,* 68 F.3d at 36 ("In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence."); *MacFawn v. Kresler,* 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 486, 666 N.E.2d 1359 (1996) (mem.) (test is whether "the final disposition of the proceeding involves the merits and indicates the accused's innocence"); *Hollender v. Trump Village Cooperative, Inc.,* 58 N.Y.2d 420, 425–26, 461 N.Y.S.2d 765, 768, 448 N.E.2d 432 (1983); *Restatement (Second) of Torts* § 660 comment *a* (1977).

For example, under New York law, an "adjournment in contemplation of dismissal," *i.e.,* a conditional dismissal that becomes final 6–12 months thereafter if the court has not in the interim, on motion of the prosecutor, restored the case to the calendar upon determining that the dismissal "would not be in furtherance of justice," N.Y.Crim. Proc. L. § 170.55(2) (McKinney Supp.2002), is not a favorable termination because it leaves open the question of the accused's guilt, *see, e.g., Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), and allows the state to pursue the criminal prosecution in the interests of justice during the conditional period, *see* N.Y.Crim. Proc. L. § 170.55(2). *See generally Hollender v. Trump Village Cooperative, Inc.,* 58 N.Y.2d at 424–26, 461 N.Y.S.2d at 767–68, 448 N.E.2d 432. Simi-

larly, as to other types of nonadjudicative resolutions, "if the outcome was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999) (internal quotation marks omitted).

On the other hand, as we discussed in *Murphy v. Lynn,* a discontinuation of the proceedings because of "the accused's assertion of a constitutional or other privilege" may well be viewed as a favorable termination. 118 F.3d at 949. In that case, we ruled that the state's effective abandonment of a prosecution, which resulted in a dismissal for violation of the accused's speedy trial rights, without an adjudication of his guilt or innocence, constituted a favorable termination "for the accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution," *id.,* or " 'to preserve his right to civil retribution for a demonstrated wrong' " *id.* at 950 (quoting *Lenehan v. Familo,* 79 A.D.2d 73, 77, 436 N.Y.S.2d 473, 476 (4th Dep't 1981)). In *Smith v. Holtz,* 87 F.3d 108 (3d Cir.), *cert. denied,* 519 U.S. 1041, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996), the Third Circuit, applying Pennsylvania law, ruled that a dismissal on double jeopardy grounds is a favorable termination. *See id.* at 113 ("Actual innocence is not required for a common law favorable termination, *see Restatement of the Law of Torts* §§ 659, 660 (1938), and a dismissal of charges on double jeopardy grounds is a common law favorable termination.").

In the present case, Fulton argues that he satisfied the favorable-termination element of his malicious prosecution claim because (1) the family court found him innocent of any wrongdoing (*see* Fulton

brief on appeal, Malicious Prosecution Argument ¶ 1 ("the family court ruling found that no wrong had been committed by plaintiff")); and (2) the supreme court dismissed the June 27 contempt counts against him in recognition of his constitutional right to be free from double jeopardy. Although Fulton's second ground may be valid, the factual premise of his first ground is false, for the disposition in family court was in no sense a finding "that no wrong had been committed by [Fulton]." As set out in detail in Part I.B. above, Fulton repeatedly sought reassurance that the family court judge would not make any finding; and the judge expressly stated, because of Fulton's consent to, *inter alia,* a lengthy protective order and an order of probation, that it was "not making any findings" (Fam. Ct. Tr. 10; *see also id.* at 11 ("This is by stipulation and without a finding.")). Indeed, so little semblance was there of any finding that Fulton had not committed any wrong that Fulton's attorney in the criminal prosecution represented to the supreme court, albeit mistakenly, that Fulton, "[a]s a result of the filing of the Family Court petition, *plead guilty* to the petition and was placed on probation" (Fulton Notice of Motion ¶ 15 (emphasis added)).

■ Nonetheless, a dismissal on grounds of double jeopardy may well be considered a favorable termination, for the repeated prosecution of a person for an offense of which he has already been acquitted or convicted is forbidden by the Constitution, and a dismissal on double jeopardy grounds is a vindication of that fundamental right. *See generally North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal[ and] protects against a second prosecution for the same offense after con-

viction" (footnote omitted)); *see also Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (the Clause also protects against multiple criminal punishments for the same offense "when such occurs in successive proceedings"); *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (Double Jeopardy Clause of the Fifth Amendment applies to the States through the Fourteenth Amendment).

The district court rejected Fulton's contention that the supreme court's double-jeopardy-based dismissal of the June 27 contempt counts satisfied the favorable-termination element, because the district court noted that Fulton was convicted of the June 27 harassment charge on which he had been arrested. Although Fulton argued that *Janetka v. Dabe,* 892 F.2d at 190, established the principle that an accused arrested on multiple charges but convicted on only one may proceed with a claim for malicious prosecution on the charge on which he was not convicted, the district court distinguished that case on the ground that it involved distinct offenses against different victims, whereas Fulton's alleged offenses were against a single victim. *See* November 2000 Opinion at 8.

We do not rely on this rationale. "*Janetka* . . . highlight[s] the need to . . . analyze the charges claimed to have been maliciously prosecuted" separately from those on which the accused was convicted, *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991), and the proper distinctions are not always obvious. *Compare Janetka,* 892 F.2d at 190 (claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction of disorderly conduct), *with DiBlasio v. City of New York,* 102 F.3d 654, 655, 658 (2d Cir.1996) (claim of malicious prosecution on charges of sale

of cocaine, of which plaintiff was ultimately acquitted, was barred by his conviction of possession of cocaine); *see also id.* at 659 (Jacobs, J., concurring in the judgment). We conclude that the circumstances of the present case do not require us (a) to undertake the analysis essential for a determination of whether Fulton's conviction of harassment bars his claim for malicious prosecution of the dismissed June 27 contempt counts, (b) to decide whether the supreme court's double jeopardy dismissal was a favorable termination for purposes of his malicious prosecution claim, or (c) to reconcile any tensions among the various competing principles, for it is clear beyond cavil that Fulton cannot satisfy other elements of a malicious prosecution claim.

As noted at the beginning of this section, in order to establish such a claim, a plaintiff must show that a proceeding was commenced or continued against him (a) without probable cause and (b) with malice. Fulton cannot make either showing with respect to the commencement or continuation of the criminal prosecution.

■ First, the criminal prosecution was commenced by the filing of the August 14, 1997 indictment. The return of an indictment creates a presumption as to the existence of probable cause. *See, e.g., Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996). Although that presumption is rebuttable by a showing "that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith," *id.; see, e.g., Colon v. City of New York,* 60 N.Y.2d 78, 82–83, 468 N.Y.S.2d 453, 455–56, 455 N.E.2d 1248 (1983), there was no suggestion of any such misconduct here. Given Mary's sworn complaints against Fulton and the resulting accusatory instruments sworn out by the police officers, no rational factfinder could conclude that Robinson lacked probable cause

for such participation as she was shown to have had in Fulton's arrest and prosecution. As discussed in Part II.A. above, there was ample probable cause for Fulton's arrest, and given Fulton's assiduous efforts in family court to avoid having Mary's complaints actually adjudicated, the record reveals no basis for any possible rebuttal of the presumption of probable cause created by the return of the indictment.

■ Second, Fulton could not show that the criminal prosecution was commenced or continued against him with malice, *i.e.,* with " 'a wrong or improper motive, something other than a desire to see the ends of justice served,' " *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996) (quoting *Nardelli v. Stamberg,* 44 N.Y.2d 500, 503, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975 (1978)). The August 14 indictment initiated the prosecution of charges that had not then been adjudicated. The family court proceeding against Fulton had not been concluded, and Fulton was not subjected to any punishment in that proceeding until September. The criminal prosecution was thus merely an overlapping case. The arrest itself had clearly been made on probable cause; and Fulton adduced no evidence from which it could be inferred that the prosecution was commenced out of any motive other than a desire to serve the ends of justice. Nor can the criminal prosecution reasonably be viewed as having been improperly continued. The overlapping June 27 contempt counts were dismissed no more than four days after Fulton first furnished the relevant family court documents to the supreme court.

In sum, we conclude that Fulton's malicious prosecution claim was properly dismissed because he could not show that the criminal prosecution on the overlapping

counts was commenced or continued with malice and without probable cause.

## C. *Fulton's Procedural Complaints*

Finally, we note that Fulton makes certain procedural challenges to the entry of judgment against him, complaining principally (a) that the district judge should have granted a motion for recusal, and (b) that the district judge lacked "jurisdiction" to grant summary judgment because Fulton and Robinson had consented to have the matter referred to a magistrate judge for all purposes. These contentions have no merit.

■ A judge is required to disqualify himself from "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1994). The basis for Fulton's recusal motion was that Judge Siragusa had ruled against him on all of his motions and that the judge had been an assistant district attorney in Monroe County; Fulton speculated that the judge may have been acquainted with Robinson. The judge stated on the record that he did not know Robinson, and Fulton presented no evidence to the contrary, nor any evidence whatever of bias. The grounds asserted by Fulton did not require recusal. *See generally Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (recusal not warranted merely because of repeated judicial rulings against the movant); *Sewer Alert Committee v. Pierce County,* 791 F.2d 796, 798 (9th Cir.1986) (per curiam) (recusal not required merely because of judge's prior acquaintance with defendants); *cf. United States v. Dandy,* 998 F.2d 1344, 1349–50 (6th Cir.1993) (recusal not warranted by judge's acquaintance with witness), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F.2d 1157, 1166 (5th Cir.1982) (recusal not required merely because judge, when he was an attorney more than six years earlier, had represented one of the parties), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

■ Fulton's "jurisdictional" contention is also meritless. Although the Federal Magistrates Act allows the parties in a civil matter to consent to have a magistrate judge try the case and order the entry of judgment, *see* 28 U.S.C. § 636(c)(1) (1994), the district court has the power "for good cause shown on its own motion, or under extraordinary circumstances shown by any party, [to] vacate a reference of a civil matter to a magistrate under this subsection," *id.* § 636(c)(4) (Supp. II 1996). In the present case, Fulton did not indicate his agreement to such a reference until after the final motions for summary judgment had been argued to the district judge. It was well within the court's discretion to reject reference to a magistrate judge when dispositive motions were pending before the district judge.

## CONCLUSION

We have considered all of Fulton's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.