Michael NOGA, Plaintiff,

v.

William POTENZA, City of Schenectady Police Officer; John L. Lewis, City of Schenectady Police Officer, aka John Doe or Does; and Paul S. Cirincione, Defendants.

No. 99–CV–941 (DRH).

United States District Court, N.D. New York.

Sept. 4, 2002.

Dreyer Boyajian LLP, Attorney for Plaintiff, Albany, Daniel J. Stewart, Esq.

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Attorney for Defendant Potenza, Albany, Michael J. Murphy, Esq.

Gleason, Dunn, Walsh & O'Shea, Attorney for Defendant Lewis, Albany, Michael P. Ravalli, Esq.

Roche, Corrigan, McCoy & Bush, Attorney for Defendant Cirincione, Albany, Joseph M. McCoy, Esq., Of Counsel.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff Michael Noga ("Noga") commenced this action alleging that defendants William Potenza ("Potenza"), John L. Lewis ("Lewis") and Paul S. Cirincione ("Cirincione") violated his Fourth Amendment rights to be free from false arrest and malicious prosecution in violation of 42 U.S.C. § 1983 and New York state law. A three day jury trial concluded on March 20, 2002 with a verdict in favor of Noga awarding him compensatory damages against all three defendants[1] totaling $235,000. Judgment was entered thereon. Docket No. 75. Potenza and Lewis, but not Cirincione, now move for orders granting them (1) judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), (2) a new trial pursuant to Fed.R.Civ.P. 59(a), or (c) remittitur. Docket Nos. 77, 79. Noga opposes the motions. Docket Nos. 86, 87. For the reasons which follow, defendants' motions for judgment as a matter of law or for a new trial are denied and their motions for remittitur are granted.

## I. Background

The evidence is described herein in the light most favorable to Noga as the prevailing party. *See* section II(A) *infra.*

In February 1995, Cirincione leased from Noga a garage on Crane Street in the City of Schenectady under a written agreement prepared by Noga. Paragraph 3(d) of the rental agreement allowed Noga to secure the premises and remove property from the garage as collateral if the rent became overdue. Thereafter, Cirincione allowed his friend Lewis, a City of Schenectady police officer, to use the garage for his race car. In January 1998, Cirincione fell behind in his rent and Noga learned that the power company had terminated service to Cirincione's garage for nonpayment. Noga placed padlocks on Cirincione's garage on three occasions, but Cirincione cut the locks off each time. During this time, Noga spoke to Lewis, who warned Noga to "be careful" because Lewis was a Schenectady police officer.

In late January 1998, Noga entered Cirincione's garage pursuant to the lease agreement and removed a welder, generator and other tools as security for the unpaid rent. Cirincione spoke to Lewis about the seizure and advised Lewis of the lease agreement permitting the seizure. Lewis questioned its legality and said he would discuss the matter with others at the Schenectady Police Department. While on duty, Lewis spoke to a detective about Noga's actions. Lewis was ultimately told by the detective that the matter should be pursued in Small Clams Court and had nothing to do with the police department. Lewis then spoke to Potenza, a detective, while both were on duty. Potenza advised Lewis that the lease provision for entry and seizure appeared illegal. Lewis then advised Cirincione to file a criminal complaint against Noga and sent a police officer to visit Cirincione to take the complaint. At Lewis' urging, Cirincione filed the complaint against Noga alleging burglary.

Potenza and another detective then telephoned Noga several times in an effort to obtain the return of Cirincione's property without further legal action. However,

---

1. Before trial, Lewis was granted summary judgment on Noga's state law claim for malicious prosecution. *See Noga v. Potenza,* 169 F.Supp.2d 83, 91 (N.D.N.Y.2001).

Noga refused to return the property or to go to the police station to meet with Potenza and insisted on his right of seizure under the lease agreement. Potenza applied for and received a warrant for the arrest of Noga for burglary, a felony. Potenza's application for the warrant did not disclose the existence of the lease agreement or the self-help provision. Noga was arrested at his home by officers of the New York State Police on March 5, 1998 and taken to a nearby police substation for processing. Shortly thereafter, Potenza arrived and transported Noga to the Schenectady Police Department. Noga attempted to show Potenza the lease agreement which he had brought with him, but Potenza refused to look at it.

Noga was kept in a cell overnight and taken before a town justice on the afternoon of March 6, 1998. He was released from custody and hired an attorney to represent him. Thereafter, the Schenectady County District Attorney's Office reduced the felony burglary charge to misdemeanor trespassing. Lewis complained about the decision to an Assistant District Attorney and was told that the case was a civil matter, not a criminal one. Noga moved to dismiss the charge and attached to his motion a copy of the lease agreement to support his claim that he was entitled to enter Cirincione's garage and seize property. In October 1998, the charge was dismissed for insufficiency. This action followed.

## II. Discussion

### A. Legal Standards

Potenza and Lewis move for an order (1) granting judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, (2) granting a new trial pursuant to Fed.R.Civ.P. 59, or (3) granting remittitur.

A motion for judgment as a matter of law under Rule 50 should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the moving] party on that issue." Fed. R.Civ.P. 50(a)(1). The standard under Rule 50 "mirrors" that for a motion for summary judgment under Fed.R.Civ.P. 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion under Rule 50, a court must consider all evidence in the record and not simply the evidence favorable to the nonmovant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir.2001). "In doing so, however, the court must draw all reasonable inference in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 (citations omitted). Thus, in reviewing the entire record, a court should consider only that evidence favorable to the nonmoving party and any evidence supporting the moving party which is uncontradicted and unimpeached. *Id.* at 151, 120 S.Ct. 2097.

The standard for granting a new trial under Rule 59 is less demanding. "[U]nlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998) (internal quotations and citation omitted); *see also Funk v. F & K Supply, Inc.*, 43 F.Supp.2d 205, 224 (N.D.N.Y.1999) (McAvoy, J.). Thus, " 'a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict.' " *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir.2000) (quoting *Landau*, 155 F.3d at 104). A court should grant a new trial if "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo,*

226 F.3d at 54 (internal quotations and citation omitted).

As to remittitur, if a court finds that damages awarded by a jury are excessive, it may grant a defendant's motion for a new trial in whole or limited to damages, or it may grant remittitur by conditioning denial of a defendant's motion for a new trial on a plaintiff's accepting damages in a reduced amount. *See Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir. 1995); *Tanzini v. Marine Midland Bank,* 978 F.Supp. 70, 77 (N.D.N.Y.1997) (McAvoy, C.J.). Remittitur is " 'the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.' " *Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1328 (2d Cir. 1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir. 1984)). "It is not among the powers of the . . . court . . . simply to reduce the damages without offering the prevailing party the option of a new trial." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 914–15 (2d Cir.1997) (quoting *Tingley Sys., Inc.,* 49 F.3d at 96). A reduced award should represent "the maximum award that would not be excessive." *Ragona v. Wal–Mart Stores, Inc.,* 62 F.Supp.2d 665, 668 (N.D.N.Y.1999) (McAvoy, C.J.), *aff'd,* 210 F.3d 355 (2d Cir.2000) (citations ojitted).

### B. Lewis' Motion

Both Potenza and Lewis challenge the jury's verdict on grounds of qualified immunity and excessiveness of the award. Those contentions are addressed *infra* in subsections C and D. Lewis separately asserts five additional grounds for his motion as follows.

### 1. Personal Involvement

Lewis first contends that the evidence failed to establish that he was personally involved in any deprivation of Noga's constitutional rights. Lewis Mem. of Law (Docket No. 78) at 2–5. In particular, Lewis contends that the evidence failed to establish his involvement in the prosecution of Noga.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Personal involvement encompasses a police officer's "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). In order for liability to attach, the police officer must have knowledge or reason to know that a person has been unjustifiably arrested or maliciously prosecuted and a "realistic opportunity to intervene to prevent the harm." *Anderson,* 17 F.3d at 557; *Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982). "Whether an officer had sufficient time to intercede . . . is an issue of fact for the jury unless . . . a reasonable jury could not possibly conclude otherwise." *Anderson,* 17 F.3d at 557.

Lewis contends that he was not personally involved because, in an argument which pervades his motion, he was not an active participant in the arrest or prosecution of Noga. First, the evidence at trial allowed the jury to conclude that Lewis attempted to intimidate Noga from taking action before the seizure, contacted detectives on Cirincione's behalf after the seizure, sent a police officer to Cirincione's place of business to facilitate taking a complaint, provided Potenza with information about the case, and contacted the Assistant District Attorney assigned to prosecute Noga to protest reduction of the charge against Noga. These facts sufficed to permit the jury to conclude that Lewis was

personally involved in both the false arrest and malicious prosecution of Noga.

Second, personal involvement also includes a police officer's failure to protect a civilian's constitutional rights. *See Anderson*, 17 F.3d at 557. Lewis' knowledge of the self-help provision permitted a reasonable juror to conclude that Lewis owed a duty to protect Noga's constitutional rights by informing the proper authorities. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir.1997). Lewis sent an officer to Cirincione's place of business to facilitate taking Cirincione's complaint against Noga. This fact alone allowed the jury to find that Lewis had sufficient time to prevent the violation of Noga's constitutional rights.

Lewis' motion on this ground is denied.

## 2. Causation

Lewis next contends that his actions did not contribute to causing the deprivation of Noga's constitutional rights. Lewis Mem. of Law at 5–9. Specifically, Lewis argues that the intervening actions of Potenza and others caused any deprivation and that he was not involved in the decision to prosecute Noga. Thus, Lewis' central contention is that he could not be held liable for either false arrest or malicious prosecution because others, not himself, directly arrested and prosecuted Noga.

■ A plaintiff must demonstrate that the acts of a defendant proximately caused the deprivation of rights to sustain claims of false arrest and malicious prosecution under section 1983. *See Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir.1994). More than one act and more than one person may contribute to causing the deprivation of a civil right. *See Dugas v. Jefferson County*, 931 F.Supp. 1315, 1320 (E.D.Tex.1996), *aff'd*, 127 F.3d 33 (5th Cir.1997).

■ Here, there was evidence from which a reasonable juror could conclude

that Lewis counseled, induced, procured and failed to prevent the false arrest and malicious prosecution of Noga. Lewis attempted to intimidate Noga from taking action before the seizure, contacted detectives on Cirincione's behalf after the seizure, sent a police officer to Cirincione's place of business to facilitate taking a complaint, provided Potenza with information about the case, contacted the Assistant District Attorney assigned to prosecute Noga to protest reduction of the charge against Noga, and failed to act to prevent the arrest or prosecution of Noga despite knowing of the self-help provision in the lease. These acts and omissions could reasonably be found to have contributed to causing the violations of Noga's rights. Lewis' motion on this ground is denied.

## 3. Insufficient Evidence of Malicious Prosecution

■ To establish a malicious prosecution claim under § 1983, a plaintiff must demonstrate "a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Id.* Lewis contends that the evidence that Noga was maliciously prosecuted was insufficient to establish that Lewis commenced or continued the prosecution of Noga, that the prosecution was terminated in Noga's favor or that probable cause existed for the prosecution. Lewis Mem. of Law at 9–13.

■ As to commencing or continuing the prosecution, the evidence included proof that Lewis contacted detectives to

determine whether criminal charges could be instituted against Noga, caused a police officer to travel to Cirincione's place of business to take a formal complaint without Cirincione having requested Lewis to do so, and initiated contact with an Assistant District Attorney to determine the status of the prosecution of Noga and to attempt to persuade the prosecutor not to reduce the charge. Such evidence sufficed for a reasonable juror to conclude, *inter alia*, that Lewis induced Cirincione to file a criminal complaint against Noga which Cirincione did not otherwise intend to do.

 As to the termination of Noga's prosecution, "any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, [generally] qualifies as a favorable termination for purposes of a malicious prosecution action.... [I]t makes no 'difference how the criminal prosecution is terminated, provided it is terminated, and at an end.'" *Smith–Hunter v. Harvey*, 95 N.Y.2d 191, 195–96, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000) (citations omitted). "The accused need not establish his innocence, nor is it necessary that a dismissal affirmatively indicate the innocence of the accused to qualify as a favorable termination." *Dallas v. Goldberg*, No. 95 Civ. 9076(LTS)(RL), 2002 WL 1013291, at *7 (S.D.N.Y. May 20, 2002) (citing *Smith–Hunter*, 95 N.Y.2d at 198, 712 N.Y.S.2d 438, 734 N.E.2d 750). Here, the charge against Noga was ultimately dismissed for "lack of merit" and, from the testimony of the prosecutor, it was reasonable to conclude that the charge against Noga was abandoned at the time of its dismissal. Lewis' argument on this ground is without merit.

Finally, Lewis contends that probable cause for the prosecution of Noga was established because Lewis could reasonably have concluded that, notwithstanding the self-help provision in the lease, Noga did not proceed peaceably in resorting to self-help. Lewis Mem. of Law at 12. However, there was sufficient evidence for the jury to conclude that the prosecution of Noga was commenced and continued without probable cause in light of the self-help provision in the lease which was known to Lewis. Lewis' contention on this ground must be rejected.

Lewis' motion on this ground is denied.

### 4. False Arrest

 Lewis appears to contend that Noga's false arrest claims must fail as a matter of law because Noga's arrest was effected pursuant to a warrant. Thus, according to Lewis, because formal proceedings had been commenced prior to Noga's arrest, Noga's sole remedy lies in a malicious prosecution claim. Lewis Mem. of Law at 13–14. However, a claim for false arrest exists despite the issuance of a warrant if there was sufficient evidence from which a reasonable juror could conclude that the warrant was obtained by false testimony or by the omission of material facts. *See Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir.1999); *Simms v. Village of Albion, N.Y.*, 115 F.3d 1098, 1107 (2d Cir. 1997). The jury here could reasonably have concluded that the self-help provision in the lease, known to Lewis, precluded probable cause for the issuance of the warrant. Accordingly, Lewis' contention on this ground is without merit.

### 5. Jury Instructions

 Lewis also contends that he is entitled to a new trial because the instructions to the jury were erroneous in four respects. Lewis Mem. of Law at 17–19. On such a motion, the instructions must be reviewed as a whole to determine if they provide "a misleading impression or inadequate understanding of the law." *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 696 (2d Cir.1993) (internal quotation marks

and citation omitted); *see also Phillips v. Bowen,* 278 F.3d 103, 110 (2d Cir.2002). A party may file written requests for certain instructions and "[n]o party may assign as error the giving or the failing to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. If a party failed to object to a particular instruction, relief for a defective instruction may be granted only if it amounted to fundamental error. *See Jarvis v. Ford Motor Co.,* 283 F.3d 33, 62 (2d Cir.2002). "Fundamental error ... is 'so serious and flagrant that it goes to the very integrity of the trial.'" *Id.* (quoting *Shade v. Housing Auth. of New Haven,* 251 F.3d 307, 313 (2d Cir.2001)).

### a. Superceding and Intervening Cause

Lewis contended at trial that the actions and omissions of Potenza and Cirincione rather than his own caused the arrest and prosecution of Noga. Lewis requested an instruction on superceding and intervening causes. Ravalli Aff. (Docket No. 77) at Ex. A. The instruction was not given, Lewis timely objected and Lewis now contends that the Court's failure to give this charge was erroneous. Lewis Mem. of Law at 17–18.

■ The Court's instruction on proximate cause stated that "an injury or damage is proximately caused by an act, whenever it appears from the evidence in the case that the act played a substantial part in bringing about, or actually causing, the injury or damage, and that the injury or

damage was either a direct result or a reasonably probable consequence of the act." Jury Instructions at 24.[2] This instruction advised the jury as to the standard to apply to the question of causation and permitted the parties to argue their various views on the issue. The instruction was neither misleading nor inadequate. *See Vasina v. Grumman Corp.,* 644 F.2d 112, 116 (2d Cir.1981) (holding that brief instruction on proximate cause sufficient to guide jury on issue of superceding and intervening negligence raised by defendant).

### b. Duty to Intervene

■ Lewis contends, as he did at trial, that the instruction on his duty to intervene was erroneous. The instruction given to the jury stated in pertinent part that Lewis could be found liable

if you find that John Lewis was aware of facts which, if disclosed, would have avoided or reduced any violation of Michael Noga's rights, and that John Lewis had the ability to prevent or reduce any such violation of Michael Noga's rights. If you find that this duty to intervene existed, the duty was a continuing one and did not end with the arrest or the commencement of the prosecution of Michael Noga.

Jury Instructions at 10–11. Lewis contends that this instruction failed to advise the jury that it must find that Lewis "had knowledge or reason to know that [Noga] has been unjustifiably arrested or maliciously prosecuted and a realistic opportu-

---

2. The jury was also instructed that although there are three defendants in this action, it does not follow, from that fact alone, that if one is liable, all three are liable. Each defendant is entitled to a fair consideration of his own defense. A defendant is not to be prejudiced by the fact, if it should become a fact, that you find against another defendant.

Jury Instructions at 3. The jury was further instructed that it could find Lewis liable only if it found that Potenza committed the acts which caused the deprivation of Noga's rights and that Lewis either intentionally joined in the deprivations or knowingly failed to intervene to prevent them. *Id.* at 10–11.

nity to intervene to prevent the harm." Lewis Mem. of Law at 18.

The instruction as given was actually more favorable to Lewis. The instruction requested by Lewis would have permitted the jury to find liability if it found either that Lewis knew *or* had reason to know the requisite facts. The instruction as given permitted a finding of liability only if Lewis "was aware" of the requisite facts and omitted any reference to "reason to know." The difference between the requested language of "realistic opportunity to intervene" and the given charge of "ability to prevent or reduce" is immaterial. Viewed as a whole, the instructions on this issue as given were neither misleading nor inadequate.

### c. Personal Involvement

 Lewis contends that the jury instructions failed to give the jury adequate guidance on the requirement that Noga establish Lewis' personal involvement in the constitutional violations. Lewis Mem. of Law at 18–19. First, while Lewis requested a charge on personal involvement, Ravalli Aff. at Ex. B, Lewis failed to object to the omission of this charge at the charge conference as required by Fed. R.Civ.P. 51. The omission of this charge must, therefore, rise to the level of "fundamental error" to entitle Lewis to relief. Second, the charge as given was neither misleading nor inadequate on this issue. For example, the jury was instructed that to find Lewis liable, it must find that Lewis either "intentionally assisted, counseled, induced, procured or otherwise joined in the deprivation of Michael Noga's rights" or, with knowledge of the material facts, failed to intervene to prevent the deprivation of Noga's rights. Jury Instructions at 10–11. These instructions were not misleading or inadequate and in any event did not constitute fundamental error.

### d. Probable Cause

 Finally, Lewis contends that the instruction on probable cause placed an "undue burden" on Lewis because the evidence at trial established that Lewis made no decisions regarding the arrest or prosecution of Noga. Lewis Mem. of Law at 19. However, the jury was instructed that it could find Lewis liable only if it found that Potenza performed the acts leading to the deprivation of Noga's rights and that Lewis either intentionally joined in the deprivation of Noga's rights or knowingly failed to intervene to prevent the deprivations. The instructions on this point were neither misleading nor inadequate.

Lewis motion for a new trial on the ground that the jury instructions were erroneous must be denied.

### C. Qualified Immunity

 Both Potenza and Lewis asserted claims of qualified immunity at trial. The jury was instructed on the issue without objection, Jury Instructions at 25–27, and specifically rejected these claims. Special Verdict Form (Docket No. 76) at ¶¶ 1(C), 2(C), 3(C). Potenza and Lewis now contend that they are entitled to judgment as a matter of law on the ground of qualified immunity. Potenza Mem. of Law (Docket No. 80) at 2–5; Lewis Mem. of Law at 14–16.[3] They contend that it was objectively reasonable for them to believe that probable cause existed for the arrest and prosecution of Noga.

 Qualified immunity protects government officials from civil liability if "it was objectively reasonable for them to believe their acts did not violate ..." clearly established rights. *Provost v. City of Newburgh*, 262 F.3d 146, 160–61 (2d Cir. 2001); *see also Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d

**3.** Lewis, but not Potenza, moved for summary judgment on the ground of qualified immunity before trial. Lewis' motion was denied. Docket No. 43 at 14 n. 3.

523 (1987). In determining whether a right is clearly established, a court should consider "(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991). This does not require that "the very action in question [be] previously … held unlawful," *Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), but merely that the "unlawfulness must be apparent." *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034.

Viewing the evidence at trial in the light most favorable to Noga as the prevailing party, that evidence established that both Lewis and Potenza were aware of the lease agreement between Noga and Cirincione and that it permitted Noga to enter Cirincione's garage and seize property if, as occurred, Cirincione fell behind in paying his rent. The evidence further established that with knowledge of the lease and the self-help provision, Potenza, assisted by Lewis, proceeded to obtain an arrest warrant for Noga without disclosing to the issuing judge the existence of the lease agreement or the self-help provision, a material fact which would have negated the probable cause for Noga's arrest. It further established that Noga was arrested and prosecuted on that charge and a related charge through the efforts of Potenza and Lewis.

If enforceable, the self-help provision in the lease authorized Noga's actions and defeated any criminal charge. It is unquestioned that by February 1998, a police officer applying for an arrest warrant was required to disclose all material facts to the judge to whom application was made. As stated by the Second Circuit,

It is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). A plaintiff can demonstrate that this right was violated where the officer submitting the probable cause affidavit "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit" or omitted material information, and that such false or omitted information was "necessary to the finding of probable cause." *Id.* at 870–71 (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978)) (internal quotations omitted).

*Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir.1993). The issue thus presented on the issue of qualified immunity is whether Potenza or Lewis could reasonably have believed in February 1998 that the self-help provision in the lease between Noga and Cirincione was unenforceable as a matter of law and, therefore, a nullity. Potenza and Lewis bear the burden of proof on this issue. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir.2000).

Defendants have offered no evidence to support a claim that a self-help provision was unenforceable. Moreover, it appears that the law was well settled by February 1998 that such provisions in a lease were enforceable. A lease for the rental of real property is a legally binding contract defining the rights and obligations of the lessor and lessee. *See Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 673 (2d Cir.1995). While New York law provides that provisions of a contract may be unenforceable if unconscionable, *see* N.Y. Real Prop. Law § 235–c (McKinney 1989), defendants have cited, and research has re-

vealed, no cases in which the self-help provision found in the lease between Noga and Cirincione was held to be unenforceable as unconscionable. Thus, given the lease and its self-help provision, a police officer in the positions of Potenza and Lewis could not reasonably have believed that the self-help provision was unenforceable and would have concluded that the actions taken by Potenza and Lewis were unlawful.

Neither Potenza nor Lewis is entitled to qualified immunity on any claim as a matter of law. Their motions on this ground are denied.

### D. Remittitur

 Both Potenza and Lewis contend that the award of damages to Noga was excessive and must be reduced. Potenza Mem. of Law at 6–7; Lewis Mem. of Law at 19–25. The standard for review of damages awarded by a jury under a federal law is the traditional common law standard whether the award "shocks the conscience." *See Consorti v. Armstrong World Indus., Inc.*, 103 F.3d 2, 4 (2d Cir. 1995); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir.1992). The standard for review of damages awarded by a jury under a state law is defined by the applicable state law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 419–20, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *Fowler v. Industrial Tire Products, Inc.*, No. 00–7661, 2001 WL 51007, at *1 (2d Cir. Jan.22, 2001). The standard under New York law is set forth in N.Y. C.P.L.R. § 5501(c) (McKinney Supp.2002), which directs a court to "determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." The "deviates materially" standard under New York law is less deferential to the jury's verdict than is

the "shocks the conscience" standard. *See Gasperini*, 518 U.S. at 424, 116 S.Ct. 2211; *Gasperini v. Center for Humanities, Inc.*, 149 F.3d 137, 140 (2d Cir.1998) (noting on appeal after remand that the New York standard is "more favorable to the party challenging the award than is the federal 'shocks the conscience' review").

Here, Noga made no claim for lost wages or other economic loss. His claim for damages was limited to those for the emotional distress caused by his arrest and prosecution.[4] With minor additions, the evidence of that mental distress was adduced solely through the testimony of Noga himself. Viewing that evidence in the light most favorable to Noga, the evidence established the following.

Noga was born in Poland in 1935 and emigrated to the United States in 1965, becoming a citizen in 1970. Trial Tr. 259–62. He was employed for twenty-nine years until his retirement by the General Electric Company in Schenectady as a master mechanic. *Id.* at 262. He purchased, renovated and leased the garage in question for additional income. *Id.* On the day of his arrest, Noga was preparing for a birthday party for his son when a New York State Trooper arrived at his home and directed Noga to accompany him to the State Police station. *Id.* at 268. It is not clear whether Noga was handcuffed during the ride to the station, but Noga rode in the front seat with the trooper. *Id.* Noga was "scared" going to the station. *Id.* at 269. At the station, Noga was photographed and fingerprinted and was then transferred to Potenza's custody. *Id.* at 269. Potenza transported Noga to Schenectady where Noga surrendered his personal effects and was placed in a cell. *Id.* at 270. The cell was dirty and unsanitary.

---

**4.** Noga made no claim for punitive damages in his complaint. During trial, Noga moved for leave to amend his complaint to add a claim for punitive damages. That motion was denied.

*Id.* The constant noise in the jail kept Noga from sleeping that night. *Id.* at 270–71. During the night, Noga recalled how his father had been arrested in Poland when Noga was twelve and held in custody for two weeks. *Id.* at 261–62, 271. The next afternoon, Noga was taken before a judge and released from custody. *Id.* at 271–72. He retained an attorney to represent him on the criminal charge and ultimately paid him a total of $1,500. *Id.* at 272. Noga made no further court appearances and all charges were dismissed eight months later. *Id.* Noga offered no evidence that, for example, he ever suffered loss of sleep or nightmares after the night in jail, that he ever sought or received treatment for mental or medical problems caused by the arrest or prosecution, or that he suffered any physical injury, loss of reputation, inconvenience or any other such injury.

The parties agree that guidance as to whether the award to Noga shocks the conscience or deviates materially from reasonable compensation may be found in federal and state cases presenting similar circumstances. *See Lee v. Edwards,* 101 F.3d 805, 812 (2d Cir.1996); *Rodick v. City of Schenectady,* 856 F.Supp. 105, 109 (N.D.N.Y.1994) (McAvoy, J.). However, the dearth of evidence supporting Noga's claim of emotional distress distinguishes this case from such other cases. For example, Noga cites eight cases in support of his contention that the award here was not excessive. Pl. Mem. of Law (Docket No. 86) at 11. The closest of those cases to the facts of this case is *Bender v. City of New York,* 78 F.3d 787 (2d Cir.1996). There, plaintiff prevailed on claims against police officers for false arrest, malicious prosecution, battery and intentional infliction of emotional distress and was awarded an aggregate total of $300,700. *Id.* at 788. The Court of Appeals concluded that "the basic facts are that [plaintiff] was in custody for one day, the experience caused her some emotional distress, and she suffered no permanent disability." *Id.* at 792.[5] Defendants challenged only the $150,000 award for intentional infliction of emotional distress and the court granted remittitur of that amount. *Id.* at 795. This holding left intact the jury's award of $10,000 for false arrest and 130,000 for malicious prosecution, awards which the Court of Appeals declined to review because they had not been contested by defendants in the district court. *Id.* at 789–90, 795.

In another case cited by Noga, the jury awarded plaintiff compensatory damages of $300,000 on his false arrest claim and $322,000 for malicious prosecution. *Jocks v. Tavernier,* 97 F.Supp.2d 303, 309–10 (E.D.N.Y.2000). The district court upheld these awards where the evidence showed that as a result of the arrest and prosecution, plaintiff had been humiliated by a front page article in a daily newspaper, lost his job, lost custody of his child, suffered sleeplessness, made twenty-eight court appearances on the criminal charges and endured a nine-day trial resulting in his acquittal on all charges. *Id.*

The Second Circuit in *Bender* and Lewis in his memorandum of law cite numerous cases with evidence of damages closer to those established here in which awards substantially below that awarded here were sustained. *Bender,* 78 F.3d at 792–93 (collecting cases); Lewis Mem. of Law at 22–25. In light of these cases and the limited evidence of emotional distress presented by Noga, the conclusion is compelled that the award of damages here shocks the conscience and deviates materi-

---

5. The criminal charges against the plaintiff were dismissed six months after her arrest.

78 F.3d at 789.

ally from what would constitute reasonable compensation.

The question then becomes what maximum amount of damages could be awarded to Noga that would not be excessive. Given the evidence and the guidance provided by other similar cases, it appears that the maximum award of damages for Noga's false arrest claims which would not be deemed excessive is $40,000. *See, e.g., Gardner v. Federated Dep't Stores, Inc.,* 907 F.2d 1348, 1353 (2d Cir.1990); *Orndorff v. De Nooyer Chevrolet, Inc.,* 117 A.D.2d 365, 368, 503 N.Y.S.2d 444 (3d Dep't 1986). Given the evidence and the guidance provided by other similar cases, it appears that the maximum award of damages for Noga's malicious prosecution claims which would not be deemed excessive is $51,500. Therefore, defendants' motion for a new trial on the issue of Noga's damages is granted unless Noga files and serves a written acceptance of remittitur of the awards of damages on his (a) false arrest claim to $40,000 and (b) malicious prosecution claims to $51,500 on or before September 20, 2002.

### III. Conclusion

For the reasons stated above it is hereby

**ORDERED** that:

1. The motions of defendants Potenza and Lewis (Docket Nos. 77, 79) for:

A. Judgment as a matter of law or a new trial are **DENIED**; and

B. Remittitur are **GRANTED** to the extent that defendants are granted a new trial on the issue of damages *unless* Noga files and serves written acceptance of remittitur of the award of damages on the false arrest claim to $40,000 and on the malicious prosecution claims to

$51,500 on or before **September 20, 2002.**

**IT IS SO ORDERED.**