20-827-cv
*Gatling v. West*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-one.

PRESENT:
> BARRINGTON D. PARKER JR.,
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

------------------------------------------------------------------

DANA GATLING,

> *Plaintiff-Appellant*,

> v.                                                                          20-827-cv

TIMOTHY M. WEST,

> *Defendant-Appellee*.

------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT
DANA GATLING:                          RUSSELL A. SCHINDLER, The Law Office of Russell A. Schindler, Kingston, New York.

FOR DEFENDANT-APPELLEE
TIMOTHY M. WEST:                      BRIAN D. GINSBERG, Assistant Solicitor General, Of Counsel, (Victor Paladino, Senior Assistant Solicitor General, Barbara D. Underwood, Solicitor

General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART AND VACATED IN PART**, and the case is **REMANDED**.

Dana Gatling appeals from a judgment of the district court (Suddaby, *J.*), granting summary judgment in favor of defendant-appellee Timothy M. West on all her federal claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Gatling asserts that West, who is a New York State Police trooper, falsely arrested her and maliciously prosecuted her in violation of the Fourth Amendment and Section 1983, by arresting and charging her with driving while impaired by drugs and a traffic infraction – charges that were later dismissed. Gatling further alleges that Trooper West, who is Caucasian, was motivated to arrest and charge her because she is Black, in violation of Section 1981.

We review a grant of summary judgment *de novo*. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). In doing so, "all ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party." *Id*. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision.

## BACKGROUND

At approximately 11:22 a.m. on May 14, 2017, following a 911 call in which the caller reported observing a grey Chevy Impala being driven erratically eastbound on Interstate 88, Trooper West responded almost immediately to the area in question in his marked vehicle. From an overpass, Trooper West noticed a grey Chevy Impala travelling eastbound on Interstate 88 and followed that vehicle for approximately one-half mile. According to Trooper West, although observing no erratic driving, he saw the car travelling twenty-five to thirty-five feet behind another vehicle at approximately fifty to fifty-five miles per hour, and believed that the car was too close in distance behind the other car in violation of New York State Vehicle and Traffic Law ("VTL"). At that point, Trooper West initiated a traffic stop of the Impala (operated by Gatling).

During the traffic stop, Trooper West asked for Gatling's license and registration and, after Gatling complied, he determined that the documents were valid. When Trooper West asked Gatling where she was headed, Gatling indicated that she was traveling from her home in Maryland to the Albany suburb of Cohoes and had been on the road for about six hours. Trooper West did not detect any odors of alcohol or marijuana, nor did he observe from his vantage point at the passenger side window any drugs, drug paraphernalia, or empty pill bottles. However, according to Trooper West, Gatling's eyes were bloodshot and watery, and her pupils were constricted. Trooper West then asked Gatling to step out of the car so that he could perform field sobriety testing, and Gatling complied. Trooper West asserts that she passed two of the sobriety tests – that is, the horizontal gaze nystagmus test (in which she was asked to visually track a moving pen without turning her head) and the alphabet test (in which she was asked to recite the letters from "A" to "Z"). However, Trooper West testified that she failed three other tests – namely, the walk-and-turn test (in which she was asked to walk forward for a short distance, turn around, and then

3

retrace her steps), the one-leg-stand test (in which she was asked to stand on one leg and audibly count the thirty seconds of time that passed), and a finger-count test (in which she was asked to use one of her fingers to touch each of the fingers on the other hand). According to Trooper West, based upon his observations and testing, Gatling exhibited "impaired speech" and "impaired motor coordination," and observed something "going on with her balance." Joint App'x at 158, 267. According to Gatling, she had no drugs or alcohol in her system, she passed all the sobriety tests, and her eyes were not bloodshot.[1]

Trooper West stated that, following the tests, he asked Gatling about her medical history to determine whether the problems he observed might be attributable to health issues, but Gatling refused to answer. He further testified that, when he asked for permission to search the vehicle, Gatling refused. Shortly thereafter, Trooper West placed Gatling under arrest for violating VTL Section 1192(4) (driving while ability impaired by drugs), which is a misdemeanor, and Section 1129(a) (following another vehicle more closely than is reasonable and prudent), which is a traffic infraction.

Following Gatling's arrest, Trooper West conducted a search of her person and vehicle and found no evidence of drug possession or consumption. After being transported to the police station, Gatling submitted to a breathalyzer test, which came back negative for the presence of alcohol. Trooper Jonathan Cook, who was a drug recognition expert, conducted a Drug Recognition Evaluation of Gatling (which included an interview and additional sobriety tests) at approximately 12:30 p.m., and concluded that she was impaired by a "central nervous stimulant"

---

[1] In addition to testifying that she passed all five of the sobriety tests to which Trooper West testified that he administered, Gatling recalled a sixth test (namely, touching the tip of her nose with her eyes closed) that she passed, even though Trooper West did not recount administering that particular test.

4

and that it was unsafe for her to drive a motor vehicle. Trooper West then obtained a urine sample from Gatling.

Gatling was arraigned on the two charges that same day at the Town of Oneonta Court, and bail was set. After Gatling had spent several hours in jail, a friend posted bail and she was released. In July 2017, Gatling's urine sample came back negative as to the drugs screened by the State Police laboratory and the District Attorney's Office subsequently withdrew the charge of driving while impaired by drugs. In July 2018, the charge of following another car too closely was dismissed by the Town of Oneonta Court. This lawsuit followed.

## DISCUSSION

### I. False Arrest and Malicious Prosecution Claims

Gatling challenges the district court's determination that summary judgment in Trooper West's favor was warranted with respect to Gatling's false arrest and malicious prosecution claims under Section 1983 because of the existence of probable cause. It is well settled that probable cause constitutes an absolute defense to a false arrest claim, *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), and also defeats a claim for malicious prosecution, *see Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). For purposes of this appeal, Trooper West does not contest Gatling's ability to satisfy the other elements of those claims and, relying on the district court's analysis, argues that "any reasonable jury would conclude that both her arrest and her prosecution were supported by probable cause." Appellee's Br. at 2. As set forth below, we conclude that disputed issues of material fact preclude summary judgment on the issue of probable cause as to these claims.

Trooper West argues that there is no genuine dispute of fact that Gatling passed only two of the five field sobriety tests based upon his testimony and his near-contemporaneous sworn

5

statement to that effect. We disagree. Gatling's testimony that she, in fact, passed all five of those tests, including the three that Trooper West claims she failed, is sufficient to raise a genuine issue of fact on that material question. Trooper West contends that her testimony should be discredited because it is "'devoid of any concrete particulars and wholly conclusory' as to what plaintiff did during the tests to make her feel that she had passed them – and, more importantly, what she did that supposedly should have made *Trooper West* feel that she passed them." Appellee's Br. at 17-18 (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999)). As a threshold matter, we note that, once Gatling testified in her deposition that she believed she passed each sobriety test, Gatling was not asked any additional questions as to why she had such a belief. In any event, the fact that she was not told Trooper West's standards for evaluating whether she passed or failed these tests does not eliminate this factual dispute. A jury could rationally credit Gatling's testimony and conclude that she could determine whether she passed those tests based only on hearing Trooper West's instructions, especially with tests as basic as standing on one leg and finger-counting. As to Trooper West's testimony regarding his belief that she passed only two of the tests, upon which the district court relied, we recognize that probable cause may exist even if it is based on mistaken information, as long as the officer acted in reasonable reliance upon that information. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). However, if Gatling performed the tests exactly as instructed by Trooper West, a rational jury could find that he fabricated her negative test results or, at a minimum, any belief that she failed was not reasonable. Moreover, Gatling notes that, at his deposition, Trooper West was unable to explain which "clues" or factors led him to conclude that she had failed three of the tests, and no such explanation exists in his paperwork. Therefore, viewing the record as a whole, a jury is not required to credit Trooper

6

West's testimony that he believed that she failed three tests, nor is it required to find that any such belief was reasonable.

Trooper West's alternative argument, that probable cause still existed for the arrest as a matter of law even if Gatling passed all five field sobriety tests, is similarly flawed. First, to the extent that Trooper West seeks to rely upon his testimony that her eyes were bloodshot and watery, Gatling disputes those facts, relying upon her denial that her eyes were bloodshot, and the additional fact that Trooper West did not check the box for "glassy eyes" on the D.W.I. Bill of Particulars. Second, the evidence of Gatling's purported unsafe driving is also surrounded by disputed issues of fact that preclude summary judgment on the probable cause issue. A dispatch call may be a factor supporting probable cause if it is "sufficiently corroborated." *United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007). Here, although there was a 911 call regarding erratic driving by a car meeting the general description of Gatling's Impala (*i.e.*, the color and model), Trooper West's observations as he followed the car did not corroborate the 911 call; to the contrary, he testified that he followed Gatling's car for one-half mile and witnessed no erratic driving whatsoever. Moreover, Trooper West's observation that Gatling was travelling too close to the car in front of her in that she was twenty-five to thirty-five feet behind the car travelling at a rate of fifty to fifty-five m.p.h. – even if true – hardly provides probable cause for charging the driver with driving while impaired by drugs.[2]

---

[2] Gatling contends that "[t]here is no authority [under New York law] for the proposition that driving 3 car lengths, or 35 feet behind another vehicle at 50 mph constitutes a violation of Vehicle & Traffic Law § 1129(a), Following Too Closely." Appellant's Br. at 14. In response, Trooper West clarified that he is not attempting to rely upon any alleged traffic infraction to establish an independent basis for her arrest under Section 1129(a). *See* Appellee's Br. at 23 ("To be sure, that observation alone might not have been independently sufficient to support a conviction for violating the Vehicle and Traffic Law."). Instead, he argues that Gatling was "violating the common highway-safety practice of allowing at least one car-length between her car and the car ahead for every 10 miles per hour of speed," *id*., and that such an observation by Trooper West should be considered (as we have) in assessing whether there was probable cause to arrest Gatling for driving while under the influence of drugs based upon the totality of the circumstances.

In any event, as to this allegedly uncontroverted fact[3] and the only other remaining observation by Trooper West that Gatling does not explicitly deny in her testimony – namely, that her pupils were constricted – a jury could, if it found that Trooper West lied about (or exaggerated) her poor performance on the field sobriety tests based upon the totality of the evidence, also could discredit his testimony regarding her dilated pupils and her following too closely to another car. *See Sakoc v. Carlson*, 656 Fed. App'x 573, 577 n.7 (2d Cir. 2016) (holding that probable cause issue in driving-while-impaired case could not be decided on summary judgment and noting that "the district court itself found that 'evidence that [the trooper] allegedly fabricated evidence of erratic operation affects the credibility of his remaining observations during the traffic stop and renders that credibility determination a question for the jury'" (quoting district court opinion)).[4] In short, construing the evidence most favorably to Gatling, a rational jury could find that there was no probable cause for Gatling's arrest or her prosecution.

## II. Qualified Immunity

Because the district court granted summary judgment to Trooper West based upon a finding of probable cause as a matter of law, it did not reach the question of qualified immunity. However, given that we have now found that probable cause cannot be decided on summary judgment

---

[3] Gatling testified that, at the time she was pulled over, she was not aware that she had committed any traffic infraction.

[4] We note that, although probable cause for arrest is measured from facts known to the officer at the time of the arrest (and not later-acquired facts), *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), a jury is permitted to consider the subsequent negative breathalyzer and drug test by Gatling in assessing Trooper West's credibility with respect to whether he observed constricted (or watery or bloodshot) pupils. *See, e.g., Green v. Throckmorton*, 681 F.3d 853, 862-63 (6th Cir. 2012) ("Nor can we penalize [plaintiff] for failing to produce any evidence directly rebutting [the officer's] stated observation [regarding constricted pupils]. After all, [plaintiff] cannot speak to the appearance of her pupils any more than [a driver] could speak to the odor of his own breath (or to whether his eyes were 'glazed or glassy'). What matters here, rather, is . . . that a subsequent test for drugs and alcohol showed that the driver was in fact sober. That evidence alone is sufficient to cast doubt on the truthfulness of [the officer's] testimony regarding [plaintiff's] pupils.").

because of the disputed issues of material fact in the record, we turn to Trooper West's alternative argument regarding qualified immunity.

Even in the absence of probable cause, a police officer is entitled to qualified immunity "so long as 'arguable probable cause' was present when the arrest was made." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). As we have emphasized, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Thus, under this standard, an arresting officer is entitled to qualified immunity, as a matter of law at the summary judgment stage, only "if the *undisputed* facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *McClellan v. Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in original).

Here, Trooper West asserts that "the record establishes that, field sobriety tests aside, a variety of other indicia of plaintiff's drug impairment were present," Appellee's Br. at 25, and that "[a]rguable probable cause is amply established here," *id*. at 24. That contention is unpersuasive, however, when the facts are construed most favorably to Gatling. In doing so, we do not put the field sobriety tests aside as requested by Trooper West, but rather construe the results of those tests (as with all evidence on summary judgment) in the light most favorable to Gatling. In other words, under that standard, a rational jury could find that: (1) a 911 call reported erratic driving by a car on Interstate 88; (2) Trooper West followed a car matching the general description from the 911 call for one-half mile and witnessed no erratic driving; (3) after stopping the car, he smelled no

9

alcohol or marijuana coming from the car and observed no indication of drug use as he looked into the car; and (4) he performed field sobriety testing and the driver passed all five tests that he administered. Even assuming *arguendo* that we treat as uncontroverted (as Trooper West urges) that he noticed that Gatling was violating common highway safety practice by driving only thirty-five feet behind the car in front of her at fifty m.p.h. and believed that the driver had constricted pupils, no officer of reasonable competence would conclude that probable cause to arrest the driver for driving while impaired by drugs existed based upon those facts under the above-referenced circumstances. In particular, any reasonable officer would conclude that whatever limited corroboration those facts could plausibly provide for the 911 call were undermined by all of the other objective facts demonstrating no driver impairment (including the lack of erratic driving for one-half mile and the passing of all of the field sobriety tests), and that no probable cause for arrest existed. Accordingly, summary judgment on grounds of qualified immunity is unwarranted.

## III. Racial Discrimination Claim

To establish a claim under 42 U.S.C. § 1981, a plaintiff must establish the following elements: (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination concerned "one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The plaintiff bears the burden throughout an entire Section 1981 lawsuit to "prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

10

Here, Gatling argues in a cursory fashion that a combination of facts – namely, the lack of probable cause, Trooper West's "false allegation" that she was uncooperative and disrespectful, and the playing of music denigrating to women in the police vehicle while she was being transported after her arrest – are sufficient to demonstrate Trooper West's racial animus and preclude summary judgment on this claim. Appellant's Br. at 28. We disagree.

We recognize that direct evidence of discrimination is not required and cases such as this often rest on the cumulative weight of circumstantial evidence. *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998). However, "a jury cannot infer discrimination from thin air." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). Without more, arresting someone without probable cause does not demonstrate racial animus. Similarly, "[a]lthough mistreatment by [a defendant] is not irrelevant in assessing the strength of [a plaintiff's] circumstantial evidence of race-based animus, it is certainly not sufficient to establish it." *Id.* at 102.

Here, Gatling alleges no race-based comments by Trooper West nor does she attempt to provide circumstantial evidence of unequal treatment by Trooper West when her treatment is compared to that of Caucasian motorists. Instead, Gatling focuses on her dispute with Trooper West's assessment of her level of cooperation during the arrest to try to satisfy her burden of demonstrating racial animus. At his deposition, Trooper West testified that Gatling "was very cooperative during my initial conversation with her." Joint App'x at 152. Later in the deposition, he further explained:

> I can tell you that while she was in the vehicle, she was very cooperative. I remember that specifically. At some point after I asked her to get out of the vehicle and advised her that I was going to be conducting more testing in field sobriety and asking her other questions, she bec[ame] disrespectful and uncooperative.

Joint App'x at 169-70. Trooper West added that he did not recall specifically what he perceived as disrespectful and noted, "Most people are either respectful or disrespectful, which typically has

11

no bearing on our investigation or how we might handle it.  But I documented that as it was at the time."  Joint App'x at 170.  Although Gatling disagrees with Trooper West's assertion that she was only very cooperative during the early portion of her encounter with Trooper West and then became disrespectful, that disagreement does not provide evidence from which a jury (even if they credited Gatling's version) could rationally infer Trooper West was harboring racial animus.

Finally, the only evidence of mistreatment during the stop and arrest proffered by Gatling is that Trooper West, while he was transporting her for about one hour from the police station to court, allegedly played approximately one to three songs on a CD in the police car that referred to women in a derogatory manner.  Gatling does not allege that she had any discussion with Trooper West about the songs, or about any other topics, during the trip.  Gatling fails to even attempt to explain how the alleged music, which she "felt was denigrating to women," Appellant's Br. at 28, constituted evidence of *racial* animus.  In sum, even when the evidence is viewed collectively, no rational jury could find that Trooper West was motivated by racial animus and that it was the "but for" cause of her arrest.  Accordingly, the district court properly granted summary judgment on Gatling's racial discrimination claim under 42 U.S.C. § 1981.

\*                    \*                    \*

For the foregoing reasons, we **AFFIRM** the judgment of the district court with respect to Gatling's racial discrimination claim under Section 1981 and **VACATE** the judgment of the district court with respect to Gatling's false arrest and malicious prosecution claims under Section 1983, and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12